English *v.* Johnson.

17 107
89 315

17 107
140 448
141 123

17 107
144 443

## ENGLISH *et als.* v. JOHNSON *et als.*

In suit for mining claims, the Court charged the jury, in effect, that possession taken of a mining claim, without reference to mining rules, was sufficient, as against one entering by no better title, to maintain the action; and further, that this possession need not be evidenced by actual inclosure, but "if the ground was included within distinct, visible, and notorious boundaries, and if plaintiffs were working a portion of the ground within those boundaries," this was enough, against one entering without title: *Held,* that the instruction was right; that though the regular and usual way of obtaining possession of mining claims be according to the mining regulations of the vicinage, still, a possession not so taken is good against one taking possession in the same way; and that the actual prior possession of the first occupant would be better than the subsequent possession of the last.

No acts are required as evidence of the possession of a mining claim, other than those usually exercised by the owners of such claims. A miner is not expected to reside on his claim, nor build on it, nor cultivate it, nor inclose it. He may be in possession by himself, or by his agents or servants.

Going on the lead to work it, or even work done in proximity and in direct relation to the claim, for the purpose of extracting or preparing to extract minerals from it—as, for example, starting a tunnel a considerable distance off, to run into the claim—would be a possession of the claim within the meaning of the rule.

As to the extent of a miner's possession, where he enters under a written claim or color of title, his possession, except as against the true owner or prior occupant, is good to the extent of the whole limits described in the paper, though the possession be only of a part of the claim.

Where a claim is distinctly defined by physical marks, possession taken for mining purposes embraces the whole claim thus characterized, though the actual occupancy or work done be only on or of a part, and though the party does not enter in accordance with mining rules, or under a paper title. The rule which applies to agricultural lands, and holds to a more strict interpretation of a *possessio pedis*, does not apply to such a case.

The nature of the possession requisite, when applied to different kinds of property, as agricultural lands, town lots covered with water, large districts where there is no timber, etc., suggested.

Fences are not requisite around mining claims. The physical marks upon and around the claim are sufficient to notify every one of the possession and claim

of the possessor; and by common understanding, the going upon a claim to work it is an appropriation of the entire claim; especially, if that claim can be appropriated to that extent by location by one man.

*Query :* Whether, if several distinct claims have been consolidated into one, and the rules of the locality allow but one claim to be taken by one man, and after this consolidation, a person should go upon the consolidated claim to work, without authority from the owner, his possession might not be referred to the particular claim upon which he entered, and not to the whole tract; and whether the question might not be one of intent; and whether the presumption would not be, that he meant to appropriate only the quantity allowed by the rules of the vicinage?

In the absence of any mining rule declaring that a failure to record a claim avoids the entry or claim, a party may take actual possession of mineral land, though in taking possession he do not observe the requirements as to registry, and the like acts prescribed by the local laws. But if he take more land than these rules allow, this would not give him title to the excess against any one subsequently entering, who complies with the laws, and takes up such excess in accordance with them.

Miners have the power to prescribe the rules governing the acquisition and divestiture of titles to this class of claims, and their extent, subject only to the general laws of the State.

Where plaintiff claims, under purchase and location, a small tract of mineral land, with demarked limits, of which he is in possession, and there is no proof on the trial that the extent of his claim is opposed to the local rules, the presumption is, that his possession is rightful, and not wrongful.

In such case, the plaintiff need not show, in the first instance, that he was in possession in accordance with the local laws; but may (as a vendee under a deed may as to other land) make a *prima facie* case, upon possession; and this is enough until the defendant shows that the possession is wrongful because in violation of rules which justify him in going upon the premises and working them.

In this case, *held,* that defendant could not offer in evidence an extract or single clause of a book containing the mining rules, but must offer the whole book— the book being in Court, and in possession of defendant, and it being necessary to a fair understanding of any one part, that the whole should be inspected.

Plaintiffs here—three in number—claiming by purchase and location, defendant offered to show that one of the plaintiffs had admitted, years ago, that he had more than five claims : *Held,* that the evidence was properly ruled out—its relevancy not being shown.

Where the judgment seems right, on the merits, this Court will not sustain mere technical exceptions taken in the course of the trial, unless compelled by law so to do.

APPEAL from the Sixteenth District.

Suit for the possession of a piece of mining ground—there being five defendants. The complaint avers ownership and former pos-

session in plaintiffs, and ouster of a portion of the claims by defendants; and contains allegations for an injunction, which need not be stated. It also avers that the mining ground "was located, and the possession thereof acquired by those under whom plaintiffs claim said ground, on or about the twentieth day of November, 1857."

The description of the ground is as follows : "That piece or parcel of mining ground situate, lying, and being on Pompey's Hill, near the village of Lancha Plana, in the county of Amador, and State aforesaid, and particularly described as follows, to wit : Beginning at a stake at the south-west corner of said ground, and running from thence northerly three hundred and ninety-six feet, to a stake ; thence easterly one hundred and forty-one feet, to a stake ; thence southerly three hundred and thirty-seven feet, to a shaft, now filled up ; thence westerly three hundred and three feet, to the place of beginning ; the same being bounded on the west by mining grounds claimed by Newman & Co. and Weller & Co. ; on the north by ground claimed by Kidd, Weller & Co. ; on the east by ground claimed by Kidd, Goodwin & Co. and Waddell & Co. ; and on the south by the claims of Pierce, Donnelly & Co. ; said mining grounds being marked by a ditch surrounding the same."

The substance of the answer is, a denial that the premises were located, or the possession thereof acquired by those under whom plaintiffs claim, in November, 1857, or at any other time, to a greater extent than two claims of one hundred feet square, lying upon the extreme southern end of the premises ; or that the premises have ever been in the possession of plaintiffs, except those two claims, and another portion, of which defendants are not averred to have ousted plaintiffs ; and averments that defendants entered lawfully upon the northern portion of the premises of which they are charged to have ousted plaintiffs ; that plaintiffs pretended, on the day of defendants' entry, to be owners and in possession of the entire premises, but that the premises covered a much larger extent of ground than the mining customs, rules, and regulations of the district permitted ; that, by such custom, when a party desired to locate a piece of mining ground sought to be held by another in excess of the quantity allowed, he was required to call upon said other party to adopt and point out such boundaries as should include

only the allowable quantity of ground; and in case of refusal, the party desiring to locate had himself the right to enter and take possession of the allowable quantity, providing there be left to the party refusing to point out his boundaries sufficient ground, including that actually occupied by labor for mining purposes, to make up the customary quantity; and that defendants did, in pursuance of this custom, enter upon the premises in dispute.

From the evidence, it appeared that in October, 1857, one Donnelly and his brother, and two others, located four claims; that they afterwards divided, and he and his brother took two claims on the south end of the ground now claimed by plaintiffs, and the other men the two adjoining claims; that his brother then took up ground north of these two claims; that they, with this ground, constituted the ground described in the complaint; that the whole was marked out by a small ditch, such as miners usually make to designate their lines; which ditch could be easily traced—being continuous, except in some places where chapparal intervened, and there the chapparal was cut away, so as to form the line; that in May, 1858, plaintiffs came in with Donnelly and brother, to aid in working the ground, and were allowed equal interests; a shaft was sunk, and pump put in; and in two weeks Donnelly and brother sold out to plaintiff, and left.

At this time, plaintiffs put up notices, on the ground, of what they claimed, and were in full possession, so far, at least, as that no one claimed adversely. The ground could not be worked without draining—the water being reached in the shaft before the pay dirt. Plaintiffs were constantly at work, with pump and shaft, on the ground within their lines during the summer and fall of 1858; and were so working when defendants took up about three claims on the northern portion of plaintiffs claims, sunk a shaft, and began working. Plaintiffs had done no work within those claims taken up by defendants. The whole ground claimed by plaintiffs is five and one-third claims, of one hundred feet each; and that claimed by defendants, a little over three claims.

On the trial, defendants introduced as a witness, Little, who testified that he had a conversation with plaintiff McIntyre in June, 1858, in regard to the extent of ground claimed by his company—

English *v.* Johnson.

these plaintiffs. Witness was then asked by defendant as to the declaration of plaintiff McIntyre, in June, 1858, that plaintiffs claimed but five claims of the ground set forth in plaintiffs' complaint. This being objected to by plaintiffs, the Court held the evidence inadmissible, unless defendants could connect it with the acts of defendants in entering upon the ground claimed by plaintiffs, or that said declaration, if made, induced them so to enter. Defendants failing to show that the declaration, if made, was made to defendants, or that they had ever heard of such declaration, or that they were in any manner influenced thereby in the premises, the Court ruled the same to be inadmissible—defendants excepting.

Defendants also offered in evidence one section or article of what purported to be the written laws of the camp; to which plaintiffs objected, unless the whole of the laws were offered in connection with this section. The Court held, that if defendants relied upon the laws of the camp, they must offer the laws as they were, and not an isolated part. Defendants refused to offer the entire law, and the Court ruled out the single section—defendants excepting.

The Court charged the jury, that the law is uniform throughout the State; the same principles which regulate rights to the possession of lands in the agricultural districts, also regulate those rights to the possession of lands taken and held for mining purposes, in the mining districts; but that the *indicia* of possession or the character of the boundaries are not necessarily the same in the mining as in the agricultural districts; that the objects for which the lands are taken, and the usual course taken to secure those objects, are unlike; that the necessity which exists for fencing in agricultural districts, in order to obtain exclusive possession, does not exist in mining localities, where no importance is attached to the exclusion of the cattle or other animals belonging to others; that if the jury find from the evidence that the ground in dispute was included within distinct, visible, and notorious boundaries by the plaintiffs, or those under whom the plaintiffs claim; and that before and at the time of defendants' entry plaintiffs were occupying, by work, any portion of the ground within those boundaries, then the possession of plaintiffs extended to those boundaries, and they are now entitled to recover; that if the jury find that said grounds were not included

within such distinct, visible, and notorious boundaries, and that the plaintiffs are driven to invoke the aid of mining customs to give sufficiency to boundaries which would have been otherwise deficient, and to confer upon them a constructive possession to the extent of those boundaries, then, in order to find for the plaintiffs, they must also find that in the taking up of said ground the plaintiffs or those under whom they claim complied with such mining customs as have been shown to have existed; and that no more ground has been taken than was permitted by those customs.

Defendants excepted to the charge, and asked the Court to charge as follows:

"That if the jury find from the evidence that customs were established and in force at the diggings embracing the grounds in dispute at the time such grounds were originally sought to be located and held for mining purposes, regulating and limiting the manner and extent of locating and holding grounds for such purposes, and that such customs have since then continued, and still remain in force, the plaintiffs, in order to recover, must show a right to the possession of the ground in dispute consistent with such customs." Refused—defendants excepting.

Verdict for plaintiffs; judgment accordingly. Defendants appeal.

*J. F. Hubbard,* for Appellants.

I. The Court below erred in excluding the testimony of witness Little, to the declaration of plaintiff McIntyre, in June, 1858, that the plaintiffs claimed but five claims, &c. Plaintiff McIntyre and the other plaintiffs were then jointly interested in the subject matter of which he was speaking. The defendants were entitled to place his declaration before the jury, as an admission of the plaintiffs, limiting their own possessions; the jury to give it such considera-tion as in their judgment it was entitled to receive, under proper legal directions by the Court. (1 Greenl. Ev. secs. 172–177, 204 and note.)

That the fact to be deduced from the excluded evidence was material, will be seen from considerations presented under point III, and from the evidence in the case.

II. Evidence was submitted to the jury, upon which they were

called upon to determine whether a custom existed limiting the extent of mining claims. Defendants offered to prove the existence of another custom prescribing a remedy in cases of violation of the custom first mentioned.

The entry, for mining purposes, upon lands in the mining districts, in the actual possession of another for agricultural purposes, is sanctioned by statute.

The entry for mining purposes, upon lands in the mining districts, though in the actual possession of another, if so held for mining purposes, in excess of the customary limits, is sanctioned by custom.

III. The charge given by the Court was erroneous, and calculated to mislead the jury.

The main error in the charge consists in ignoring the right of miners to limit the extent of ground to be taken for mining purposes, by rules and customs adopted and established by them. If, for mining purposes, a party may, by fencing or other " distinct, visible and notorious boundaries," inclose more than is permitted by such rules and customs, and hold the same in defiance thereof, he may, upon the same principle and for the same purposes, inclose and hold much more—indeed, five, ten, twenty or any other number of acres ; and the consequence would be that " all of the mineral lands in a neighborhood might be appropriated by a few persons," without even the trouble of their " making a hamlet on or near the land so appropriated." (*Martin* v. *Browner*, 11 Cal. 12–14.)

But this charge practically affords a yet cheaper mode of wholesale appropriation ; fences or other substantial boundaries may be dispensed with, and large tracts may be surrounded and held by means of " the usual course taken " by miners to mark their boundaries. To prevent such monoplies these rules and customs have been established.

IV. The Court erred in refusing the instruction asked by defendants. This instruction fairly presented the law in such cases. This Court, in a recent case not yet reported and not at hand for reference, has intimated that mining rules and customs for the purposes of regulating and restricting locations upon lands for mining purposes, possess all of the potency claimed for them by this instruction.

*Robinson, Beatty & Heacock,* for Respondents.

I.   Plaintiffs were entitled to recover on their actual possession. They claim by purchase from the original locators, and without reference to custom or usage.

Defendants have failed to show that plaintiffs had any excess of land over the quantity allowed by the mining rules of the district, or that there were rules authorizing defendants to appropriate the excess, if any, or that they had ever complied with the regulations which they allege existed.

II.   There was no error in rejecting the testimony offered to show that one of the plaintiffs admitted, in 1858, that they, plaintiffs, were in posession of more than five claims.   Even if plaintiffs had more than five claims, they had purchased them, and had a right to them by the purchase, by their possession, and by working them. The point was not whether plaintiffs had more than five claims, but whether the quantity of ground claimed by them was against the mining rules; and whether, under those rules, defendants could and did, in conformity therewith, appropriate the excess to themselves.   In this, defendants failed; and the question asked was irrelevant, unless defendants showed that the declaration supposed to have been made by one of the plaintiffs had caused some action on the part of defendants which would become a loss to them unless plaintiffs were compelled to maintain the truth of the declaration. But defendants, at the trial, said this was not the case.

II.   The charge of the Court is correct.   In that given, the Court held, that the actual *pedis possessio* of a mining claim is good, irrespective of usage or custom.   But if it is desired to establish a possession beyond the actual, resort may be had to the custom and usage.

The charge asked by the defendants, and refused by the Court, is based upon the hypothesis that there can be no possession of a mining claim except according to the rules and regulations of the mining camp.   This instruction confounds or ignores all the distinction between actual and constructive possession, which the Court had been careful to draw.   By the mining laws generally, a claim is taken up by having it recorded in the local registry.   The charge

English *v.* Johnson.

sought by the defendants is, that if such were the rules, a man who is actually working a claim, and in the actual occupation of it by all the acts indicative of possession, could not hold it against an intruder, unless he had recorded his claim.   In other words, that any defect in complying with a local custom would authorize any intruder to dispossess the older and actual possessor of the claim which he occupies.   This is not law.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The main question in this case arises upon the instructions given by the Court upon the trial.   The case was brought to recover certain mining claims.   The Court charged the jury, in effect, that possession taken, without reference to mining rules, of a mining claim was sufficient, as against one entering by no better title, to maintain the action ; and further, that this possession need not be evidenced by actual inclosures, but " if the ground was included within distinct, visible and notorious boundaries, and if the plaintiffs were working a portion of the ground within those boundaries," this was enough as against one entering without title.   We see no objection to this ruling.   In the late case of *Attwood & Walsh* v. *Fricot et al.*, we laid down some rules on this general subject.   The taking up of mineral land in pursuance of the mining regulation of the vicinage gives possessory title to the claims, just as an entry in the land office, or the following of the prescribed rules given by statute, gives a possessory title to public or agricultural land.   But it does not follow, because this is the regular and usual way of obtaining possession, that a possession not so obtained would necessarily be without the protection of the law.   Possession not taken in pursuance of these rules would still be good as against one not taking possession in accordance with the rules of the vicinage, but merely coming upon the premises in the same manner as the prior possessor.   The actual prior possession of the first occupant would be better than the subsequent possession of the last.

The question arises as to the extent of the possession of the first taker, and the rules which determine this question.   In mining claims we require no other acts, as evidence of possession, than those

usually exercised by the owners of such claims.   A miner is not expected to reside upon his claim, nor to build upon it, nor to cultivate the ground, nor to inclose it.   The claim is usually of a small strip of land compared with the extent of ground generally taken up for agricultural purposes.   Its only value is in working it and extracting minerals.   A party may be in possession by himself, or by his agents or servants.   Going on the lead to work it, or even work done in proximity and in direct relation to the claim, for the purpose of extracting, or preparing to extract minerals from it—as, for example, starting a tunnel a considerable distance off to run into the claim—would be a possession of the claim within the meaning of the rule.   If, as we held in the case of *Attwood & Walsh* v. *Fricot et al.*, the party entered under written claim or color of title, his possession, except as against the true owner or a prior occupant, would be good to the extent of the whole limits described in the paper, though the possession be only of a part of the claim.   In this case, it seems the plaintiffs took up, in connection with others, these claims sued for, marking and defining, in the way usual among miners, the limits; and also bought out the interest of two of their associates, original appropriators.   But we think where a claim is distinctly defined by physical marks, that possession taken for mining purposes embraces the whole claim thus characterized, though the actual occupancy or work done be only on, or of a part, and though the party does not enter in accordance with mining rules, or under a paper title.   The rule which applies to agricultural land, and holds to a more strict interpretation of a *possessio pedis*, does not apply to such a case.   Inclosure, if not impossible, besides being probably hurtful to other interests and rights, would be wholly useless.   It would give no greater or better advertisement of the extent of the claim than these physical signs, nor give any better protection to the premises against intrusion, or show any higher power of dominion.   Even actual possession, as applied to agricultural land, is from its nature somewhat constructive; for there is no such thing as a literal corporal holding of land, even within the limits of an inclosure.   A house is said to be in actual possession though not occupied, the claimant having the key and exercising acts of dominion; and in truth, the whole doctrine of

_ _ .on *v.* Johnson.

possession, if not created, must necessarily be controlled and modified by the peculiar nature of the subject and by surrounding circumstances.  If town lots are covered by deep water, would inclosure be necessary to give actual possession, or a possession of equal efficacy ?   And if there were no timber, or other means of fencing, and no necessity or use for fences in a large district, could there be any sense in holding such acts necessary to protect a possession from intrusion ?   So of mining claims.   Fences are not necessary to exclude cattle, nor to give notice of a claim to given limits ; nor is the power or dominion over them at all increased or facilitated by this process.   The custom of the country does not require so useless a formality.   The physical marks upon and around the claim are sufficient to notify every one of the possession and claim of the possessor ; and, by common understanding, the going upon a claim to work it is an appropriation of the entire claim, especially if that claim can be appropriated to that extent by location by one man.  Possibly, if several distinct claims had been consolidated into one, and the rules of the locality allowed but one claim to be taken by one man, and after this consolidation a person went upon the consolidated claim to work, and did this without authority from the owner, then his possession might not be referred to the whole tract, but only to the particular claim upon which he entered.    The question then might be one of intent, and it might be argued that it is not to be presumed that he meant to take and appropriate a greater quantity than that allowed to be appropriated by the rules of the vicinage.   We see nothing in the law which would necessarily prevent a party from taking actual possession of mineral land, though in taking possession he did not observe the requirements as to registry and the like acts prescribed by the local laws.   But if he took more land than these rules allowed, this would not give him title to the excess against any one who complied with the laws, and took up such excess in accordance with them.   Much would depend upon the particular rules, and their right construction as to the effect of a registry, or the consequence of faiiing to make it.   But in the absence of any rule declaring that a failure to record avoided the entry or claim, we cannot see that this failure, when actual possession was taken by the claimant

and kept—no forfeiture or abandonment being shown—would avoid the claim, as against a subsequent entry and location in due form; much less would it have that effect in favor of a mere intruder, claiming by no better title than the first claimant.

We do not hold that a party can, in defiance of mining rules, take up any quantity he chooses of mineral land, and hold it by merely putting up stakes or marking lines, or even inclosing it. All we hold is, that he can hold the quantity allowed to be taken up by him by the rules, without strictly complying with those regulations which prescribe the mode of taking, as registry, etc., so as to protect him in that quantity, as against one not claiming through the rules; unless, indeed, there be something to the contrary in the rules. And if a party takes up and marks out a larger claim than the rules allow, he is still entitled to keep and retain possession of it as against one merely entering without complying with the rules; but the possessor is not entitled to hold the excess against one entering in pursuance of the rules, for the entry of the last according to the rules gives him the title to such excess. But this whole matter can be, and should be regulated by the miners, who have full authority to prescribe the rules governing the acquisition and divestiture of titles to this class of claims, and their extent, subject only to the general laws of the State.

In this case, no law or regulation of the vicinage was shown limiting the plaintiff's right to hold to the extent of which he was in possession. *Prima facie* being in possession, he was rightfully possessed; and no presumption can be indulged that such possession was in violation of any law, local or general. The plaintiff claims under purchase and location a small tract of land, with demarked limits, of which he was in possession; and in the absence of any proof that such claim is opposed to the local rules, we are unable to discover any principle upon which to hold that the possession is wrongful. The plaintiff need not show, in such a case as this, in the first instance, that he was in possession in accordance with the local laws; but may (as a vendee under a deed may as to other land) make a *prima facie* case upon possession; and this is enough until the defendant shows that the possession is wrongful, because in violation of rules which justify him in going upon the premises and working them.

2. The Court properly ruled that the defendants must produce all the rules in the book of the district, and could not offer an extract or a single clause of the book.    No harm was done by this requirement.    The defendants had the book in Court.    The whole of the rules, making up the body of the local law, constituted one entire instrument—as a deed or other document containing various stipulations—and it was necessary, to a fair understanding of any one part, that the whole should be inspected.    At least, there was no error in requiring the whole of these rules to be put in.

3. It is next objected that the Court erred in refusing to permit the defendants to show by a witness that one of the plaintiffs admitted, in 1858, that he had more than five claims.    We see no relevancy in this proof to anything in the issue, and its materiality ought to be made very apparent before we would reverse for such a cause.    No offer was made to connect this testimony with other proof showing its relevancy.    It would seem, at the first blush, that it was not important how many claims one or all of the plaintiffs had, if those claims were acquired by purchase, even if it were material to ascertain this fact in any aspect of the case.    We are not disposed, unless compelled to do so, to give effect to mere technical exceptions taken in the course of a trial, when we can sustain a judgment which seems to be right on the merits.

On the whole case, we think the judgment should be affirmed.

See *Coryell* v. *Cain* (16 Cal. 567).