[Civil No. 3418.   Filed October 4, 1934.]

[36 Pac. (2d) 257.]

DAVE CRISMON, Appellant, v. FRIDA O. A. CHRISTMANN, Executrix of the Last Will and Testament of WALTER F. CHRISTMANN, Deceased, Appellee.

Messrs. Dougherty & Dougherty, and Mr. Roy L. Herndon, for Appellant.

Mr. D. B. Morgan, Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee.

LOCKWOOD, J.—Walter F. Christmann, hereinafter called plaintiff, brought suit against Dave Crismon, hereinafter called defendant, alleging that while

plaintiff was in the actual, quiet, peaceable and exclusive possession of certain land belonging to the United States of America, defendant unlawfully and forcibly, and against the will of plaintiff, entered upon and took possession of such lands and expelled plaintiff therefrom, and that he still retains such possession. The prayer was for a writ of restitution. Defendant demurred to the complaint on various grounds and alleged, in addition to many superfluous matters, that he was and had been, since April 4, 1931, entitled to the possession of the land, and that he had, ever since plaintiff's entry thereon, disputed the latter's possession, and that when, on December 17, 1932, he re-entered on the land, it was vacant and unoccupied.

The case was tried to the court without a jury, and from a judgment against defendant, he has appealed. It is obvious on an examination of the abstract of record that this is an action of forcible entry and detainer and is governed by the provisions of sections 4311–4325, Revised Code of 1928, and by the principles of law applying to such an action. We think, therefore, we need not consider the major part of the arguments and citations contained in the briefs, for they discuss many questions, interesting in themselves, and perhaps of great importance had this been a different kind of action, but wholly inapplicable to the present one. The portions of the Code material for the consideration of this case read as follows:

"§ 4311. What constitutes forcible entry and detainer. If any person shall make an entry into any lands, tenements or other real property, except in cases where entry is given by law; or, shall make such entry by force; . . . such person shall be adjudged guilty of forcible entry and detainer, or of forcible detainer, as the case may be.

"§ 4312. Forcible entry defined. A forcible entry is an entry without the consent of the person having the actual possession. . . . "

"§ 4317. Right of possession only issue; verdict; continuance. On the trial of an action of forcible entry, or of forcible detainer, the only issue shall be the right of actual possession; and the merits of the title shall not be inquired into. . . . "

It will be seen upon an examination of these sections that the only issue in such a case is that of actual possession, and that the merits of the title are in no way a subject of inquiry.

Actions of this nature have been before this court repeatedly and we have settled the law of Arizona on a number of points. In the case of *Foster* v. *Black,* 20 Ariz. 64, 176 Pac. 845, 846, we reviewed the leading cases on the subject, including some of our own, and said:

"It was not a question as to who had the better title, for the merits of the title may not be inquired into. The question was, Who was entitled to the possession? Which one of the contending parties had the right of actual possession? In actions of this kind, even the owner of real property may be dispossessed if he forcibly or unlawfully takes possession of the same. . . .

"In *English* v. *Johnson,* 17 Cal. 107, 116, 76 Am. Dec. 574, the question involved was the acts necessary to constitute actual possession of a mining claim, and the court said: 'We think where a claim is distinctly defined by physical marks, that possession taken for mining purposes embraces the whole claim thus characterized, though the actual occupancy or work done be only on, or of a part, and though the party does not enter in accordance with mining rules, or under a paper title. The rule which applies to agricultural land, and holds to a more strict interpretation of a *possessio pedis,* does not apply to such a case. . . . The physical marks upon and around the claim are sufficient to notify every one of

the possession and claim of the possessor; and, by common understanding, the going upon a claim to work it is an appropriation of the entire claim. . . . '

"The question as to whether possession of a mining claim is actual or not is, ordinarily, a question of fact, but where the facts are, as in this case, undisputed, it is a question of law. The other facts found by the court clearly show that the deduction therefrom, to the effect that plaintiff did not have actual possession of the mining claim, was not justified. It may be that the plaintiff had not been personally upon the mining claim, but it was not necessary, as one may hold actual possession by agents or servants."

In *Willows Cattle Co.* v. *Connell,* 25 Ariz. 592, 220 Pac. 1082, 1083, it was held:

" . . . The defense seems to be that the plaintiff's occupancy of the premises through its tenants and employees was not an actual possession which he was bound to recognize, and that there had been, in fact, previous to the time when he went into possession, an abandonment of the possession by the plaintiff, and that at any rate he acted in good faith in assuming as much, and in buying the improvements from Devore.

"Good faith, or mere belief that he had a right to take possession, is no defense. . . .

"Possession of land is actual when there is an occupancy according to its adaptation and use. *Morrison* v. *Kelly,* 22 Ill. 609, 74 Am. Dec. 169. By actual possession is meant actual use and enjoyment of the land for such purposes as it is capable of, and not that the prosecutor shall be actually present at the time. *State* v. *Newbury,* 122 N. C. 1077, 29 S. E. 367. Actual possession is any possession of the character required by the character and situation of the land. *Allaire* v. *Ketcham,* 55 N. J. Eq. 168, 35 Atl. 900."

With these principles of law to govern us, let us consider the facts of the case. Whenever there is a conflict in the evidence, we must of course assume

the court took that view of it most favorable to plaintiff. These facts may be stated as follows: In 1884 Charles Crismon, the father of defendant, attempted to locate the ground in question, but it does not appear whether such locations were valid at the time or whether they have been kept in force or not. He died intestate, leaving as heirs several sons and daughters, but the record does not show whether his estate was ever probated or not. In 1910 the land was included in the boundaries of the Tonto National Forest. In 1920 defendant filed three location notices covering much of the same ground under the name of Red Bluff, Nos. 1, 2, and 3. In 1924 Frank Crismon, another son of Charles, filed location notices thereon under the names of Highland Nos. 1, 2, and 3. In 1927 defendant again filed location notices, but this time the ground claimed was called Blue Point and Blue Point No. 1, while in 1930 he located the Blue Point Nos. 2, 3, and 4. Nowhere is there any evidence in the record that defendant attempted to continue in force the locations made by his father in 1884. The reasonable inference is all to the effect that his attempt was to hold title to the ground in controversy by relocation. Defendant apparently worked the Blue Point claims for some time from 1927 until December, 1930. In the spring of 1931 plaintiff and defendant each made application to the Department of Agriculture for a permit to mine the land for barium. On April 14, 1931, the Forest Supervisor in charge issued such a permit to plaintiff, and he went into actual physical possession of the land and mined it until December 17, 1932, extracting therefrom and shipping large quantities of barium ore. In the meantime defendant had appealed from the decision of the Forest Supervisor, and on December 6, 1932, a final decision was

rendered by the Department of Agriculture. It was on its face based on the assumption that the locations made in 1884 by Charles Crismon were valid originally, and that the only defect therein was a failure to do the annual assessment work. The holding was in effect that the withdrawal of the land from mineral entries in 1910 did not divest Charles Crismon, and his heirs, of the right to resume assessment work on the original locations. The permit issued Christmann was canceled "to the extent it covers any valid claim of the appellant," and the Acting Secretary stated that the effect of the cancellation would "leave the appellant free to take whatever lawful action he may deem necessary to establish any rights he may have in the land under his alleged mining locations." Immediately on receiving notice of this decision, defendant, with several other men, went to the property the evening of Saturday, December 17, 1932. Plaintiff's employees, who had been operating the property practically continuously since April 14, 1931, had, as was their general custom, ceased work for the day about 4:30 P. M., and had departed for the city of Mesa, some fifteen miles away. Three of them lived in that city, coming to and from work daily. The others, four in number, lived on the property, but were in the habit of going to Mesa each Saturday night for supplies. For this reason none of them were actually on the property when defendant and his men arrived, entered on the premises, and removed therefrom most of plaintiff's tools. The next day, about noon, plaintiff's foreman returned and was informed by defendant that he had taken possession of the property. The foreman returned to Mesa and telephoned Christmann of the situation and, under the latter's instructions, attempted to resume work on Tuesday, but was ordered

by defendant to desist. Thereafter this suit was brought.

The sole question is whether, on this state of facts, plaintiff was in "actual possession" of the premises on December 17, 1932, for there can be no contention but that defendant entered thereon without Christmann's consent, which, by the statutory definition, would constitute a forcible entry if Christmann was then in actual possession of the premises. "Actual" the possession certainly was, for he had been operating the property continuously for over a year and a half, with one or more of his employees there at all times, except for temporary absences of a day or two. Nor during that time had anyone contended he did not have physical control of it to the same extent as any old and well-established producing mining company does of its property. This possession was certainly peaceable, for there is no evidence that anyone had attempted to disturb it, up to the night of December 17th. It was exclusive, for there is no contention it was shared by anyone, and it was emphatically adverse, for plaintiff and defendant were bitterly contesting who had the better right to the property before the Department of Agriculture.

The decision of the Department which defendant relies on to justify his action amounts to no more than a statement that if defendant could establish his father's locations made in 1884 as valid in every respect, except that the annual assessment work had been neglected, the permit and the withdrawal from entry in 1910 would not be an obstacle to his father's heirs resuming such assessment work, when they had established, in a legal manner, their right to the property. We are sure that the Department would indignantly repudiate the suggestion that such deci-

sion gave defendant the right to violate our forcible entry and detainer statutes.

It may be that defendant is entitled in a proper proceeding and proper manner to recover this property in question. As to that we express no opinion. But he cannot act, as the trial court necessarily found he did, and successfully defend in an action of this nature. We need not consider the other matters argued, as they are not material in view of the law and the facts governing the case.

The judgment is affirmed.