[No. 901.]

A. M. COHEN, Respondent, *v.* EUREKA AND PALISADE RAILROAD COMPANY, Appellant.

Action against Railroad Company—Nonsuit—When Should not be Granted — Questions of Fact.—Plaintiff and his companions were strangers in Eureka, and ignorant of the existence of the defendant's railroad. At the close of the plaintiff's case, there was no evidence to show that plaintiff could have seen the train, as it approached the crossing, in season to avoid the accident, except that other people in different localities, near where the collision occurred, heard and saw the approaching train in time to have avoided the accident: *Held,* that a nonsuit was properly refused.

Idem—Rights of Strangers.—The fact that plaintiff and his companions were strangers in Eureka, and did not know they were approaching a railroad crossing, was an important fact to be considered by the jury.

IDEM—CONTRIBUTORY NEGLIGENCE.—The testimony upon the part of the defendant tended to show that if the plaintiff, or any of his companions, had looked and listened, they could have seen and heard the approaching train in time to have avoided the accident: *Held*, upon a review of all the testimony, that the question whether or not plaintiff was guilty of contributory negligence, was properly submitted to the jury as a question of fact.

EVIDENCE SUFFICIENT TO SUSTAIN VERDICT.—Rule as to substantial conflict of evidence enforced.

REASONABLE CARE—NEGLIGENCE.—At the request of plaintiff, the court gave the following instruction to the jury: "No. 4. You are instructed, that if you believe, from the evidence, that the plaintiff, at or about the time set forth in the complaint, was traveling upon the road which is crossed by the track of the defendant, and was exercising reasonable care for his own safety, and in attempting to cross the railroad track of the defendant, the wagon, upon which the plaintiff was riding, was overturned by the cars of the defendant; and that, at the time that said accident occurred, the said defendant was operating their said cars and locomotive in a negligent manner, or neglected to ring the bell, or blow the whistle, or otherwise signal their approach, and, by reason of such neglect, the plaintiff was injured, you will find a verdict for the plaintiff:" *Held*, correct.

DAMAGES—WHAT MAY BE CONSIDERED.—The court, at plaintiff's request, gave the following instruction: "No. 5. You are instructed, that if you find for the plaintiff, in assessing damages, you will take into consideration, not only the cost of medical treatment and loss of time which the plaintiff has sustained, but also his bodily suffering; and, if the injury is permanent, such damages as he may sustain by reason of such suffering, as well as his incapacity for earning money in the future:" *Held*, correct.

RIGHTS AND DUTIES OF TRAVELER AND OF RAILROAD COMPANY—EQUAL.—The court instructed the jury, "That where a railroad is crossed by any street, road, or public highway, the rights of the traveling public and the railroad company, to the use of said crossing, are equal, and both parties are bound to use ordinary care, the one to avoid committing, and the other to avoid receiving, an injury:" *Held*, correct.

IDEM—SPEED OF THE TRAIN.—The court instructed the jury, that it is the duty of the employés of a railroad company "to approach the crossing at such rate of speed as would enable them to check the train, if necessary:" *Held*, erroneous.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The reason given by the court for the refusal of the fifth instruction asked by appellant (referred to in the opinion)

was: "That the law asked for has been given in the instructions asked for as modified by the court."

The fourth and fifth instructions given for respondents, and referred to in the opinion, are inserted in full in the head notes.

The second, twelfth, fourteenth, and fifteenth instructions asked by appellant, read as follows:

2. "You are instructed that it is the clear duty of a person as he comes near to and upon a railroad crossing, to use all proper precautions to avoid injury, and the least he can do is to look in both directions; if he does not do so, and the omission contributes to his injury, he is guilty of such negligence as will bar his recovery, notwithstanding the negligence of those in charge of the train in omitting to sound the whistle or ring the bell."

12. "You are instructed that it is the duty of every person approaching a railroad track to look for and to see the track itself, if visible to a person of ordinary eyesight; and if you find from the evidence that the accident in this action was primarily due to the fact that the plaintiff's driver was negligent in looking for and seeing the track itself as he approached the crossing, then your verdict must be for the defendant."

14. "You are instructed that persons approaching the track of a railroad are bound to use their eyes in looking for a track; and if you find that the driver of the plaintiff's wagon did not see the track at all as he approached it, if the track was visible, it is a circumstance indicating such negligence on the part of the driver, as would prevent a recovery by plaintiff in this action."

15. "You are instructed that if you find from the evidence that the driver of the plaintiff's wagon, and the witness, Algyn, were engaged in talking to each other, as they approached the railroad crossing, and neither looked nor listened for any sign of approaching danger, nor for the track itself, such conduct is evidence of negligence sufficient in itself to bar a recovery by plaintiff in this action."

The district judge modified the second, twelfth and fourteenth, by the addition of the following sentence: "This

is true, provided the plaintiff, or the driver, knew of the existence of the railroad track, or it could be seen by them, or ought to have been seen by a prudent man."

The fifteenth was modified by adding the following: " Provided that the plaintiff or the driver knew that the track was there, or it could be seen by them if they had looked for it, or that there was no obstruction which prevented them from seeing the coming train."

*Thomas Wren, Crittenden Thornton,* and *C. J. Lansing,* for Appellant.

I. The evidence was insufficient to justify the verdict, and the court erred in overruling defendant's motion for a nonsuit.    There is no substantial conflict of evidence upon any material issue.    The rule that appellate courts will not interfere with the verdict where there is a substantial conflict of evidence is only applied where there is a real and substantial conflict upon material points, and has no application where the conflict is more apparent than real, or does not relate to controlling issues.    (*Rice* v. *Cunningham,* 29 Cal. 495; *Lyle* v. *Rollins,* 25 Id. 440.)

If the plaintiff's cause of action, or the defendant's defense, be proved by a single witness, who stands unimpeached before the jury, and his testimony not denied, it must be received as true.    In such a case, the court may direct the jury in terms to find for one party or the other. (1 Phillips' Evidence, C. & H.'s Notes, 4th Am. ed. 711–12; *Newton* v. *Pope,* 1 Cowen, 109; *Beekman* v. *Bennis,* 7 Id. 29; *Saville* v. *Lord Farnham,* 2 Mann. & Ryland, 216; *Nichols* v. *Goldsmith,* 7 Wendell, 160; *Demyer* v. *Souzer,* 6 Id. 436.)

The testimony of witnesses apparently inconsistent is always to be so construed as, if possible, to exempt them from the imputation of perjury.    (*Johnson* v. *Scribner,* 6 Conn. 185; *Woodcock* v. *Bennet,* 1 Cowen, 750.)

The testimony of witnesses that they did not hear the bell is not entitled to any weight against the positive evidence of other witnesses, unless it appears that they were looking, watching and listening for the bell to ring.    (*Steves* v. *Oswego and Syracuse R. R. Co.* 18 N. Y. 424; *Culhane* v.

*N. Y. C. & H. R. R. Co.* 60 Id. 137; *Beiseigel* v. *N. Y. C. R. R. Co.* 40 Id. 19; *Wilds* v. *Hudson River R. R. Co.* 29 Id. 329.)

The following facts were established in this case beyond controversy:

1. The plaintiff and his fellow travelers were riding together on a straight road, in broad daylight, in the direction of a railroad track, which ran at right angles to their line of approach.

2. At any point within ninety feet of the track, the railroad was visible for a distance of two hundred and forty feet in length, and was raised above the level of the surrounding country, on an embankment of from three to five feet in height.

3. Neither the plaintiff nor his fellow-passengers saw the track, or looked for it.

4. The only reasons for their not seeing it, were their inattention as to where they were going, and talking among themselves.

5. The noise of the approaching train was distinctly audible, heard, in fact, by others at ten times greater distance from the train than the plaintiff and his companions, and which ought to have been heard by the latter.

6. The speed of the train was certainly not more than eight miles an hour, and that of the team equally fast.

7. The bell on the train was ringing up to the instant of the accident.

If the first six of the facts above stated are correct, or if the seventh is established, then the conclusion of contributory negligence upon the part of the plaintiff is unavoidable. Where the facts are admitted or established by uncontradicted evidence, the question of negligence is a matter of law for the court. (*Gavitt* v. *Manchester & Lawrence R. R.* 16 Gray, 505; *Flemming* v. *Western Pacific R. R.* 49 Cal. 257; *Pittsburg R. Co.* v. *McClurg,* 56 Pa. St. 294; *Beiseigel* v. *N. Y. C. R. R.* 40 N. Y. 19; *Solen* v. *Virginia and Truckee R. R. Co.* 13 Nev. 107.)

A person approaching a railroad-crossing must use his eyes and ears to detect and perceive even apprehended

peril from trains. (*Baxter* v. *Troy & Boston R. R.*, 41 N. Y. 502; *Ernst* v. *Hudson River R. R.*, 39 Id. 61; *Wilcox* v. *Rome, W. & O. R. R.*, Id. 358; *Grippen* v. *N. Y. C. R. R.*, 40 Id. 34; *Gaynor* v. *Old Colony R. R. Co.*, 100 Mass. 208; *Butterfield* v. *Western R. R. Co.*, 10 Allen, 532.

If the place of danger is visible to the person approaching it, such person cannot excuse himself upon the plea that he was not aware of its existence. A railroad-crossing is a place of danger, and common prudence requires that a traveler on the highway, as he approaches one, should use the precaution of looking to see if a train is approaching. (*Allyn* v. *Boston & Albany R. R. Co.*, 105 Mass. 77; *Gaynor* v. *Old Colony & Newport Railway Company*, 100 Id. 208; *Baxter* v. *Troy & Boston R. R. Co.*, 41 N. Y. 502.)

II. The court erred in refusing to give the fifth instruction requested by defendant. This instruction stated the law correctly. (*Butterfield* v. *Forrester*, 11 East, 60; *Gay* v. *Winter*, 34 Cal. 153; *Needham* v. *S. F. & S. J. R. R.*, 37 Id. 419; *Robinson* v. *Western Pacific R. R.*, 48 Id. 423.) There is no remedy for an injury which is the consequence of negligence on both sides. (*Wynn* v. *Allard*, 5 Watts & S. 524; *Simpson* v. *Hand*, 6 Whar. 311; *Fox* v. *Glastonbury*, 29 Conn. 204.) Where the negligence of the two parties is contemporaneous, and the fault of each relates directly and proximately to the occurrence from which the injury arises, the plaintiff cannot recover, if by due care on his part he might have avoided the consequences of the carelessness of the defendant. (*Lucas* v. *New Bedford R. R. Co.*, 6 Gray, 64; *Waile* v. *North Eastern R. R. Co.*, 1 Ellis, Blackburn & Ellis, 719; *Robinson* v. *Cone*, 22 Vt. 213; *Troy* v. *Vermont Central R. R.*, 24 Id. 487; *Birge* v. *Gardiner*, 19 Conn. 507; *Button* v. *H. R. R. R. Co.*, 18 N. Y. 248; *Greenland* v. *Chaplin*, 5 Exch. 243.

III. The allusion as to the rate of speed in the third instruction asked by plaintiff was unnecessary and misleading.

IV. The court erred in modifying the second, twelfth, fourteenth, and fifteenth instructions asked by defendant. These instructions simply declared the legal proposition

that a man approaching a railroad track in broad daylight which is in full view for a hundred feet before he reaches it, must see the track. If he does not, it is gross negligence. Any danger which is conspicuous must be seen. An omission to look is negligence. To look and to see is an imperative duty. (*Gilman* v. *Inhabitants, etc.,* 15 Gray, 580; *Hill* v. *Seekonk,* 119 Mass. 88; *Fallon* v. *City of Boston,* 3 Allen, 38; *Raymond* v. *City of Lowell,* 6 Cush. 535; *Cox* v. *Westchester Turnpike Company,* 33 Barb. 418.) In modifying these instructions, the district judge confused what was clear, and repeated that which needed no repetition, in multiplying excuses for the plaintiff which had no foundation in the evidence, and no necessary relation to the case presented to the jury.

*R. M. Beatty and G. W. Baker,* for Respondent.

I. The evidence is sufficient to justify the verdict. The court did not err in refusing to grant a nonsuit.

1. A man driving along a public road is not compelled to stop his team and run ahead and look up and down a railroad track and into a long deep cut to ascertain whether the train is coming or not, although he may know that the track is there, and trains frequently pass the point where he wishes to cross, and much less is he required to do so when he does not know, and as a prudent man can not know, that even the track is there.

2. A railroad company is compelled by law to signal the approach of its trains to a crossing, and our statute provides a particular signal or warning, namely, that a bell be rung.

3. The failure to ring the bell or give other sufficient warning under the peculiar circumstances of this case, was gross negligence.

4. The jury, by their verdict, decided that defendant did not ring the bell, or give other signal of their approach.

5. If the bell did not ring, and the servant of defendant saw plaintiff's team at a distance of twenty-five feet from the track, with the driver's attention attracted away, and did not use any endeavor to warn the plaintiff of his danger,

his failure in this of itself is gross negligence upon the part of defendant sufficient to entitle the plaintiff to recover.

6. To warrant this court in ordering a new trial, it must appear that if defendant had admitted that the bell was not rung, and no signal or notice given of the approach of the train, plaintiff could not recover.

The failure to give any signal of the approach of defendant's train of cars, at this crossing, was established by the clear weight of evidence, and is fortified by the verdict of the jury, and therefore ceases to be a debatable question in this court. (*State* v. *Yellow Jacket Mining Co.*, 5 Nev. 415; *Lewis* v. *Wilcox*, 6 Id. 215; *Longabaugh* v. *V. & T. R. R. Co.*, 9 Id. 302; *State* v. *C. P. R. R. Co.*, 10 Id. 49; *Solen* v. *V. & T. R. R. Co.*, 13 Id. 106.)

The numerous authorities cited by appellant contain no legal principles in opposition to the verdict of the jury in this case.

II. The third instruction is not erroneous. The testimony shows the crossing was a public one. This justified the giving of this instruction. (*Kennayde* v. *W. P. R. R.*, 45 Mo. 262; *Delany* v. *Mil. & St. P. R. R.*, 33 Wis. 71; *K. P. R. R.* v. *Pointer*, 9 Kan. 628; Shearman & Redfield on Negligence, sec. 491; *Solen* v. *V. & T. R. R.*, 13 Nev. 106; *Continental Imp. Co.* v. *Stead*, 5 Otto [95 U. S. Supreme Ct.] 161.)

III. The fifth instruction asked by defendant was erroneous. The principle asserted, that it must be shown that the plaintiff was free from negligence, presupposes the necessity of the plaintiff establishing by his own evidence the absence of negligence in himself; and it was therefore properly refused. (3 Saw. 446; 48 Cal. 409; 15 Wall. 401; Shearman & Redfield on Negligence, sec. 34; 16 Pa. St. 463; 29 N. J. Law. 544; *Needham* v. *S. F. & S. J. R. R.*, 37 Cal. 409.)


By the Court, LEONARD, J. :

Appellant seeks a reversal of the judgment in this case: First, because of the refusal of the court to nonsuit the plaintiff, upon the ground that his own negligence con-

tributed to the injury complained of, and that the evidence was insufficient to justify the verdict; and second, upon exceptions to the charge to the jury.

Respondent was injured by appellant's cars while attempting, with a team, to cross appellant's railroad track in the town of Eureka, and this action was brought to recover damages for such injury.

He recovered judgment for one thousand eight hundred and seventy-five dollars.

This appeal is taken from an order denying appellant's motion for a new trial, and from the judgment.

Before any witnesses were examined, by consent of both parties, the court and jury visited and inspected the place of the accident, at which time a train of cars was run over the road. All the material testimony, and all the instructions given, are contained in the transcript. A map of the scene of the accident, which was before the court and jury, is not before us.

The testimony given on behalf of respondent, before appellant's motion for a nonsuit, showed the following facts:

On the morning of October —, 1877, respondent, with two men, named Algin and Lawrie, the latter having been his driver, were riding in a two-horse covered wagon from Eureka to Ruby Hill. The blinds on the side of the wagon were rolled up. The driver and Algin were sitting on the front seat, while respondent was upon the back seat. They were strangers in Eureka, and did not know of the existence of the railroad. As they approached the crossing, Algin and Lawrie were talking, and none of them looked for, or saw, the railroad or the crossing. The horses were trotting. As the team came to the crossing appellant's train struck it, upset the wagon and seriously injured respondent. No one in the wagon saw the track until the collision. The engine was in the rear of the train, which was running at about its usual rate of speed, say eight miles an hour. The cars were flat, and were used for carrying ore from the mines. South of the crossing the cars passed through a cut. Neither of the persons in the wagon heard any bell or whistle, or the noise of the train. Other persons differently situated heard

the train, but none of them heard either bell or whistle. Respondent testified: "I am positively certain the bell was not rung; if so I should have heard it." Algin did not hear the bell or whistle, and said if the bell had been rung they would have heard it. Quantrell, who was working at Fiske's house, 150 feet north of the crossing, heard neither bell nor whistle, and would have heard them had they been sounded. Mrs. Fiske was certain the bell was not rung or the whistle blown, otherwise she would have heard them. Mrs. Combs knew the bell was not rung or the whistle blown, or she would have heard them.

The crossing was made some time in 1874, or thereabouts, by Mr. Shaw, president of the Eureka Consolidated Mining Company, which built and then owned the road. It was made for the use, and at the request, of Mr. Chandler, the witness. When first made, it was not a public crossing; as at that time no one resided on the west of the track. Afterwards, however, houses were built on that side, and the people used it as a crossing. For the accommodation of the people, Mr. Shaw changed the road leading through Clark street to that point, for the reason that the crossing in question was more convenient than the one where Clark street crossed.

After proof of the above facts by respondent, appellant moved for a nonsuit, upon the ground before stated, and now claims that the court erred in refusing it. This alleged error may be summarily disposed of.

In their brief, counsel for appellant say:

"We do not contend that the burden of proof devolves upon the plaintiff to show diligence or freedom from negligence. But if, upon the whole evidence, all care, diligence, heedfulness, vigilance, and caution appear to be lacking, the plaintiff can not recover." It can not, therefore, be claimed that appellant was entitled to a judgment of nonsuit, if a *prima facie* case of negligence on its part was clearly established, unless respondent's evidence also showed, that by his own negligence or want of ordinary care and caution, he so far contributed to the injury complained of, that but for such negligence or want of care and caution, the injury

would not have happened. (*Solen* v. *V. & T. R. R. Co.*, 13 Nev. 126–128.)

That the testimony given for respondent showed that no bell was rung or whistle blown, can not be doubted. Under the statute, a failure to ring the bell for a distance of at least eighty rods from the place where the railroad crosses any street, road, or highway, is negligence *per se*. It is true that one or two of respondent's witnesses merely said: "I did not hear the bell," while the rest said, either, "I did not hear it, but if it had been rung I should have heard it;" or "I am positive that it did not ring; if it had I should have heard it;" but the witnesses were in position to hear, and their testimony was just as positive as such testimony can ever be. It was just as positive as it would have been had it not been fortified by the statement, "if it had been rung I should have heard it." It was much more than a mere, "I did not hear." No honest witness could have testified as several did, without saying in substance: "The bell was not rung. My reasons for so testifying are, that it could not have been rung without my hearing it, and I did not hear it." What has been said in relation to the ringing of the bell is equally true of the blowing of the whistle. Two witnesses were just as positive that the latter was not blown as they were that the first was not rung.

A *prima facie* case of negligence on the part of appellant was clearly established, and damages resulting from the accident were shown by respondent's testimony. It now remains to be considered whether or not respondent's testimony also showed, by clear and undisputed facts, such contributory negligence on his part, that he should not recover.

When he rested, there was no evidence tending to show that any portion of the railroad was visible to a person approaching the track in a wagon from the east, or that respondent and his driver could have seen any portion of it, before they did, if they had looked for it. Proof that respondent and his driver did not look for or see the railroad, without also showing that they could have seen it if they had looked, did not tend even to prove contributory negligence.

Nor was there any evidence that respondent could or should have seen the train, as it approached the crossing, in season to avoid the accident.    Other people in different localities saw it before it reached the crossing; but that fact did not tend to show that respondent could or should have seen it; other persons differently situated heard the train; but there was no evidence that plaintiff could or should have heard it.    Besides, it was in proof that the engine was in the rear of the train as it was approaching the crossing through the cut.    Under such circumstances, especially in view of the further fact that respondent and his companions were strangers and ignorant of the existence of the railroad, it was for the jury to decide, from all the facts and circumstances, whether or not respondent contributed to his injury.    *Commonwealth* v. *Fitchburg R. R. Co.*, 10 Allen, 191, 192; *Solen V. & T. R. R. Co.*, *supra; Bunting* v. *Central Pacific R. R. Co.*, recently decided by this court.

The motion for a nonsuit was properly denied.    But it is contended that the evidence is insufficient to justify the verdict, because the whole evidence shows that the appellant was *not* negligent and that respondent *was*.    It is conceded that the proof of the latter consists only in the omission of respondent and his companions to see the track, if it was visible.    To contradict the claim of negligence on its part, appellant introduced a witness, who was riding on the cowcatcher of the locomotive at the time of the accident, the engineer in charge of the train, and two brakemen upon the same.    They all testified that the bell was rung for a greater distance than the statute requires.    The engineer stated that he did not sound the whistle, while one brakeman testified that it was sounded.

Upon the whole testimony in relation to the ringing of the bell, or giving other signal, little need be said.    First, there was much to sustain the verdict upon this point; and, second, there was a substantial conflict of testimony upon this material issue.    Unless it shall appear that the court erred in its instructions to the jury, we shall consider appellant's negligence established by the verdict.

We now come to the question of respondent's omission to

see the track. Can this court say from the whole case as presented, as a question of law, that the omission was such negligence on his part, that he ought not to recover, although it be true that appellant's negligence is fully established? There is no proof or pretense that the track in the cut, or the train when passing therein, could have been seen by respondent. It was only fifteen feet from the north end of the cut to the crossing. But it is contended that respondent ought to have seen eighty yards of the track north of the cut which was in sight. Mr. Rock, a civil engineer, testified as follows for appellant: * * * "I made the map of the scene of the accident which is now on the blackboard (in court). It was made by actual measurement by myself, and is correct. * * * The road laid down on the map which crosses the railroad track from the east, is the road on which plaintiff's wagon came up to the crossing. This road, as laid down on the map, is about seventy-five or eighty feet long, and is slightly up hill all the way. This road crosses the track very nearly at a right angle. * * * From the mouth of the cut running north, the track is in sight for nearly eighty yards. It is upon an embankment of an average height of three to five feet. It is in sight for that distance from any point on the road coming from the east as you approach the track." Upon the above testimony, which was uncontradicted by any evidence given in court, counsel for appellant claim that this court should declare, as a question of law, that respondent was guilty of contributory negligence, and cannot recover. This is the interesting portion of the case; but we entertain no doubt as to our duty. This case, like all others of its kind, must be decided upon its own facts and all the circumstances surrounding it. That a case might arise where a stranger crossing, or attempting to cross, a railroad track at a regular crossing, would be deemed negligent in failing to see the track, is undoubtedly true. Is this such a case? We are referred to *Allyn* v. *Boston and Albany Railroad Company* as an authority in favor of the proposition that it is. In that case, the plaintiff and a companion were riding, in the daytime, in an open wagon at the time of the acci-

dent. The highway over which they had driven ran for a mile or more nearly parallel with the railroad, which for most of the distance was plainly visible from it. As the crossing was approached, the highway bent a little, and in order to cross the railroad, rose four and a half feet. The ascent commenced twenty feet from the railroad track, and the track and the usual sign over the railway were visible for five rods or more before the railroad was reached. According to the plaintiff's own testimony, he could look up the railroad track towards the west (the direction from which the train which caused the injury came), and there was nothing to intercept the view. As they approached the rise, their horse was going at a moderate trot, and when they ascended the rise he walked. Plaintiff did not see where they were until the horse had got on to the track. He did not look up. Upon that state of facts the court held, that the jury should have been instructed that the plaintiff could not recover, and said: "There is nothing in the evidence to show any excuse for the neglect to ascertain whether a train was approaching. The fact that the plaintiff did not know that there was a railroad there is no admissible excuse, because it is obvious that any man who had his sight and used it, must have seen that he was approaching a railroad crossing. If the plaintiff did not see it, it shows conclusively that he was not using the circumspection and care which every prudent man does, and is required to use in traveling. It is absurd to suppose that a traveler, using ordinary care, could, in the daytime, and with nothing to interfere with his vision, get upon this railroad crossing without seeing it." (105 Mass. 77.)

It should be remarked that Massachusetts is one of the few states which hold that the burden of proof is upon the plaintiff to show ordinary care and caution on his part, as well as negligence upon the part of the defendant. But aside from that fact, there are marked differences between the facts of that case and this. There, the plaintiff had driven a mile or more nearly parallel with, and in plain sight of, the railroad. Alongside the track there was the usual sign over the highway, which was visible for five rods or

more before the railroad was reached. There was nothing to intercept plaintiff's view if he looked up the track in the direction from which the train came. Here, it is not claimed that respondent ought to have seen more than eighty yards of the track, and that only while he was traveling on a trot, eighty or ninety feet. If his horses were traveling four miles an hour, he was little, if any, more than fifteen seconds in sight of the track before the accident occurred. Besides, witness Rock stated that the eighty yards of track in sight were built upon an embankment of an average height of from three to five feet. The road leading to the crossing is slightly up hill. Under such circumstances the track proper might not have been plainly in sight, even for the whole length of time above stated. Again, Rock testified that the wagon road from the east was " nearly at a right angle " with the railroad, but it does not appear how nearly. The map used on the trial is not before us, and the expression of the witness is indefinite. So far as we know, it departed so much from a right angle, that respondent would have been compelled to turn his head in order to see the track that was visible. In *Richardson* v. *New York Central Railroad Company,* 45 N. Y. 850, it is said: " The defendant, again, by its own act, caused this injury, in its erection of the watch-house, now not used, but preventing the traveler from seeing the train, which he otherwise might. That it obstructed this traveler's view is found by the referee. That it caused the injury may be fairly inferred, as nothing could be seen as he approached the track ' owing to the formation of the ground and the situation of the watch-house.' There was a map at the trial in evidence, and none is produced here. Presumptions are in favor of affirming a judgment. Error is not presumed. If there were doubts on this point, in the absence of the map, the presumption is against error." Respondent had a right to travel on that road and to trot his horses at a reasonable rate of speed; and as a stranger, he was justified in acting upon the presumption that if there was a railroad in the vicinity, the bell would be rung for a distance of a quarter of a mile before any railroad crossing. He was not

obliged to be looking out for railroad tracks simply because there happened to be one there; but he was obliged to see it, and seeing it, to act accordingly, if a man of ordinary care and watchfulness in like situation would have seen it, or ought to have seen it, in season to avoid the accident.

*Allyn* v. *Boston & Albany Railroad Company, supra,* is the only case to which our attention has been called, or which we have been able to find, wherein the effect of ignorance of the existence of a railroad by the injured party has been discussed. But there are many cases which recognize the plaintiff's knowledge of the location of the road, or of defects in a highway, as an important fact to be considered.

"The mere fact that a traveler is familiar with the road, and knows of the existence of a defect therein, will not impose upon him the duty to use more than ordinary care in avoiding it. Such knowledge is a circumstance, and perhaps a strong circumstance; but it should be submitted, with the other facts of the case, to the jury, for them to determine whether, with such knowledge, the plaintiff exercised ordinary care to avoid injury." (Shearman and Redfield on Neg., sec. 414.)

In *Smith* v. *City of Lowell,* 6 Allen, 40, the court instructed the jury that the care required of travelers must be such as ordinary persons, in the ordinary exercise of their faculties, are accustomed to use, and must be adapted to the particular circumstances of each case; that the jury, and not the court, must determine what circumstances were proven, and must also determine, in the exercise of their practical judgment, what degree of care was made reasonable by these circumstances; that if the plaintiff was accustomed to pass over the place in question, and was well acquainted with it, they should take these facts into consideration, and determine whether, on account of them, she ought to have used increased care, or to have avoided the place altogether. The supreme court sustained the instructions fully and said: "These things were rightly left to the jury, with the instruction that the care required in the plaintiff was such as the condition of the street and her knowledge of it made reasonable care under the circumstances."

And see further: *Smith and wife* v. *The City of St. Joseph,* 45 Mo. 449; *Frost* v. *Inhabitants of Waltham,* 12 Allen, 85; *Clark* v. *The City of Lockport,* 49 Barb. 580; *Read* v. *Northfield,* 13 Pick. 98; *Mackey* v. *New York Central Railroad Company,* 27 Barb. 533, *et seq.*; *Dickens* v. *New York Central Railroad Company,* 1 Keys, 27; *Sheffield* v. *Rochester and Syracuse Railroad Company,* 21 Barb. 342; *Gilman* v. *Inhabitants of Deerfield,* 15 Gray, 581; *Flemming* v. *W. P. R. R. Co.* 49 Cal. 257; *Snow* v. *Housatonic Railroad Company,* 8 Allen, 450.

There may be a defect in a public road, and if a traveler knows of its existence, he must use ordinary care to avoid it, although it is invisible. Such defect may be readily seen by one having knowledge of its whereabouts, when an ordinarily careful man, if a stranger, might not see it in season to avoid an accident. No traveler sees every object in plain view the first time he passes through a strange country. Under the circumstances of this case, we think the fact that respondent and his companions were strangers in Eureka, and did not know they were approaching a railroad crossing, was an important fact to be considered, with others, by the jury, under proper instructions; and, we can not say, as a question of law, that respondent was guilty of contributory negligence, which should bar his right of recovery for any injury occasioned by appellant's negligence.

Exceptions to the charge to the jury remain to be considered. We have carefully examined all the instructions, and are satisfied that, with the exception of the third, given for respondent, they correctly state the law, unless it be true that appellant's eighth instruction is too favorable to it. But upon the latter question we express no opinion at this time. The fifth, requested by appellant, was properly refused, for the reason given by the court; the fourth and fifth, given for respondent, were correct, and the second, twelfth, fourteenth and fifteenth, given for appellant, were correct as modified and given. Without the modifications made the jury would have been told that it was respondent's duty to see the track itself, and to look both ways and listen for any train, although neither himself nor his driver

knew they were approaching a railroad track, or, as ordinarily careful travelers, ought to have known it or seen the track. Such is not the law. Certainly, appellant can not complain because the court informed the jury that it was negligent if it failed to ring the bell or blow the whistle, or otherwise signal the approach of the train. The test of negligence adopted by the court was more favorable to appellant than it would have been had it been limited to a failure to comply with the statute by ringing the bell.

The third instruction given for respondent is as follows: "You are instructed that where a railroad is crossed by any street, road, or public highway, the rights of the traveling public and the railroad company to the use of said crossing are equal, and both parties are bound to use ordinary care, the one to avoid committing, and the other to avoid receiving, an injury. For this purpose, it is the duty of the employés of the company to give sufficient signal of the approach of the train, by ringing the bell, sounding the whistle, or otherwise, *and to approach the crossing at such rate of speed as will enable them to check the train if necessary; and if you find from the evidence in this case that the defendant failed to exercise the degree of caution as above specified, and an accident occurred, by which plaintiff was injured, you will find a verdict for plaintiff, provided the plaintiff was free himself from negligence.*"

The italics are ours.

The first objection made to this instruction is, that it was error to charge that the rights of the traveling public and the railroad company to the use of the crossing were equal.

The case shows that the crossing was put in about three years before the trial, by Mr. Shaw, President of the Eureka Consolidated Mining Company, which built and then owned the road, for the private use of N. A. Chandler. Afterwards it became a public crossing, and was generally used by the public. In fact, Mr. Shaw changed the road leading through Clark street to that point, because the latter was more convenient as a crossing than where Clark street then intersected the railroad. There was no testimony on the part of the appellant tending to show that the crossing

was used by the public without its consent, or that it ever forbade its general use. Under such circumstances, respondent was not a wrong-doer in passing or attempting to pass over the track. He had the same right to pass over the crossing that the railroad had to run its cars. (*Solen* v. *V. & T. R. R. Co.* 13 Nev.) Of course, in one sense, trains have the superior right of way in the use of public crossings; that is to say, travelers in other vehicles are bound to yield the way to the train, if one must stop, because it is but reasonable and just that the vehicle, which can halt with comparative ease and safety, shall do so. But in every other sense, the rights of appellant and respondent to the use of the crossing were equal.

It is also urged that the court erred in instructing the jury that the employés of appellant were bound to give sufficient signals of the approaching train by ringing the bell, etc., *and to approach the crossing at such rate of speed as would enable them to check the train, if necessary.*

We think the court erred in giving the last part in relation to the rate of speed when approaching the crossing, and that there is nothing in other portions of the instructions to correct the error or mitigate the evil. The instruction informed the jury that appellant was negligent if it failed to ring the bell, etc., and to approach the crossing, as stated. In other words, they were told that, even though the bell was rung, or other signal given, still appellant was guilty of negligence, if its train did not approach the crossing at such rate of speed that it could be checked if necessary. They were told that if appellant failed to exercise the degree of caution specified; that is to say, if it failed to approach the crossing as stated, and also to ring the bell, or give other signal, then their verdict must be for the respondent, provided the latter was free himself from negligence.

The jury were justified in understanding from the instruction (if respondent was free from negligence) that appellant was negligent, and responsible for all damages sustained by respondent, if the train did not approach the crossing at such a rate of speed that it might be so checked

that respondent would receive no injury, even though, in fact, the bell was rung or other sufficient signal given. The jury may have found the appellant negligent under the instruction in question, because the train could not be checked before the accident, rather than because the bell was not rung. We can not tell. Should this instruction be upheld, it would overturn every principle which has hitherto guided courts in determining the liability of railroad companies in similar cases, and would seriously impair the usefulness of their service. Let us see. There was no proof that the crossing was in any respect a crowded thoroughfare. It does not appear that any vehicle, other than respondent's, was there, or that any other person was crossing, at the time of the accident. It is not shown that at any time it had been often frequented by man or beast, but if anything is shown, the contrary appears. Now, suppose respondent had known of the railroad, and in approaching, had both looked and listened; had taken all necessary precaution before attempting to cross. He would then have been free from negligence in crossing, if he neither saw nor heard signs of the approaching train. Suppose, again, that the engineer did, in fact, ring the bell for eighty rods before reaching the crossing, and did not run his train faster than the usual rate of speed (which was reasonable), can it be said, if he was not otherwise negligent, that appellant would have been responsible in damages for an injury, simply because the speed of the train, although usual and reasonable, was too great to permit of a check sufficiently sudden to avoid an accident? And yet that is just what the instruction means. It required of appellant extraordinary, rather than ordinary, care.

There was no proof at the trial, and it is not pretended in the argument, that the train was going at an unusual or improper rate of speed. Such being the case, if the bell was rung, there was no occasion for directing the minds of the jury to the rate of speed; and there could have been no object in so doing, unless it was to inform them that appellant was negligent if it failed either to ring the bell, etc., or to approach the crossing at such a rate of speed

that the train could be checked if necessary. There was no necessity of checking the train except to avoid the accident. It therefore follows, as before stated, that the jury were instructed that appellant was negligent if it approached the crossing at such speed that the train could not be checked in season to avoid the accident, although, in fact, the bell was rung according to law, and the speed was usual and reasonable. Such is not the law in a case like this.

It is said that "both parties are equally bound to use ordinary care—the one to avoid committing and the other to avoid receiving injury. For this purpose, it is the duty of the engineer to keep watch for travelers, to give sufficient signals of the approach of the train, by ringing his bell, sounding the whistle, or otherwise, as may be usual, and also to approach a crossing which he knows to be continually thronged with travelers, and unprotected by the company, at such rate of speed as will enable him to check the train, if necessary." (Shearman and Redfield on Negligence, sec. 481, third ed.)

The authority for the text just quoted is the *Lafayette and Indianapolis Railroad Company* v. *Adams*, 26 Ind. 76. In that case, however, the defendant's road ran through a populous street, and the track was commonly used by the inhabitants as a foot-way. The rate of speed was so great as to show that those managing the train had no care whatever as to who or how many might be killed or injured. "The case," says the court, "was so put to the jury by the instructions of the court that, upon the evidence, the verdict must have been for the defendant, unless the fact of gross negligence by the defendant, evincing a willingness to injure, had been found."

So it is apparent that neither the text nor the case cited upholds the instruction in this case; because here, as before stated, there was no proof that the crossing was, or ever had been, thronged with travelers, but the contrary, rather, appears. But in the same section of Shearman and Redfield referred to, the authors say: "But an engineer is not bound to lower his speed on approaching the ordinary highway crossings in the open country, where travelers only pass

occasionally. And even if he sees persons or teams approaching or waiting to cross the railroad, he is not bound to anticipate that they will attempt to cross in view of the train; and, therefore, he is not required to check his speed so much as would be necessary to enable them to cross in front of him."

See, also, *Warner* v. *N. Y. Cent. R. Co.*, 44 N. Y. 465; *Telfer* v. *Northern R. Co.*, 30 N. J. Law. 188; *The Madison and Indianapolis R. Co.* v. *Taffe*, 37 Ind. 365. Without quoting we make particular reference to *Telfer* v. *Northern R. Co.*, *supra.*

We are not unmindful of the fact, that the train in this case was passing through a cut as it approached the crossing, and that respondent's view of the train was obstructed. But he testified that he should have heard the bell if it had been rung; so for the purposes of this discussion, the fact above mentioned becomes immaterial. If the bell could have been heard and was rung according to law, appellant was not negligent in approaching the crossing at its usual rate of speed. If it was not rung, the negligence was in failing to sound the bell, and not in approaching the crossing at such a rate of speed that the train could not be checked before the accident.

For the error found in the third instruction given for respondent, the judgment should be reversed, and it is so ordered.