[No. 1061.]

## THE HAMBURG MINING COMPANY, Respondent, v. QUINCY A. STEPHENSON, Appellant.

Action to Determine Conflicting Claims to Real Property—Conflict of Title—Admission in Pleadings.—*Held*, that it was unnecessary for plaintiff to prove that the mill site claimed by defendant was embraced in the tract of land claimed by plaintiff, as that fact is admitted in defendant's answer.

Statement on Motion for New Trial—When Map Should be Included—Presumptions in Favor of the Judgment.—The statement on motion for new trial purported to contain all the evidence; yet it showed that there was a map used on the trial to which witnesses made constant reference, and this map was not contained in the statement. Without this map the testimony of the witnesses was indefinite: *Held*, that all doubts should be resolved in favor of the judgment.

Possession of Land—When Inclosure is Unnecessary.—Land, which is not

valuable for grazing purposes, claimed by a mining company and used mostly for the water rights thereon, need not be actually inclosed.

IDEM—EVIDENCE SUFFICIENT TO SHOW POSSESSION.—*Held,* upon a review of the testimony, that plaintiff had possession of the land described in the complaint, and that the evidence is sufficient to sustain the verdict in its favor.

PATENT FOR A MILL SITE—DEFENDANT'S EVIDENCE INSUFFICIENT.—The defendant made no claim to the land except such as resulted from his application for a mill site. There was no evidence that he ever made an application for a patent to any mine, or that the application for a patent to the mill site was included in an application for a patent to any non-contiguous vein or lode. The testimony shows that defendant was not the real party in interest, and that his application for a patent to the mill site was not made in good faith for himself: *Held,* that defendant's claim to the land was without merit.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*A. C. Ellis,* for Appellant:

I. The plaintiff in this case must recover, upon the strength of his own title, as in ejectment or trespass. If the plaintiff has neither title nor right of possession, he cannot maintain an action to quiet the title, nor to remove a cloud therefrom. It is a legal impossibility to quiet a title or to remove a cloud from a title which has no existence. If the defendant was a mere naked trespasser, absolutely without any color of right, it would be immaterial to the plaintiff, unless some right of his capable of enforcement or protection were invaded. Any other person in the community could as well maintain this action as plaintiff, if he is without right, and thus subject the defendant to costs, merely because the defendant, as between himself and the government, is without right. This reasoning is equally applicable where the proceeding is to determine conflicting claims, because the plaintiff, being the actor, the moving party, must have some ground of action. He must have some title or right known to the laws and capable of protection, else there can be no conflict. We cannot conceive of a conflict with nothing, and hence the position taken by the plaintiff in argument must fall.

II. The answer *denies* either *title, possession or right of*

*possession in the plaintiff at any time.*   This, of itself, raises an issue upon which the plaintiff might have been defeated, unless he could produce proof sufficient to sustain the issue in his own behalf thus tendered.

III. It is not essential in a case like this that the applicant for a patent to a mill site, where the applicant is the owner of a lode claim, and applies for a patent to that at the same time, the mill site being non-contiguous, non-mineral land, should actually use the land applied for at or before the application, for reduction works; or that he should be the owner of a quartz mill or reduction works upon the land at such time. (U. S. Rev. Stat., sec. 2337.)   From the language of this section it is clear that congress intended to provide for two cases, in either of which an applicant for a mill site might secure a patent for not more than five acres.   The first case is where the applicant is not the owner of a quartz mill or reduction works upon the land claimed, but where he has located or occupied the land for mining or milling purposes, and is the proprietor of a vein or lode claim, for which vein or lode claim he seeks a patent, and, in connection therewith, a patent to the mill site.   And the second is where the applicant is the owner of a mill or reduction works, and does not own a mine in connection therewith.   The allegations in our answer meet all the requirements of the first case, and the proofs, uncontradicted, support the allegations in the answer.

IV. How shall a mill site be located or occupied?   Surely not by an actual enclosure, nor by an actual residence thereon, nor by an effort at cultivation, for these are vain things, and would not render the land useful for the purposes for which it is claimed.   But we submit in analogy to a mining location or claim, and under the decisions and rulings of the department of the interior, and the cases decided by the courts, by an actual and distinct marking of the boundaries, and by a notice of claim and location, and by survey, all of which has been done in this case.   (*Rogers* v. *Cooney*, 7 Nev. 213; *English* v. *Johnson*, 17 Cal. 108; Sickels' Mining Laws and Decisions, 1881, 464, 543.)

V. The mill site was, before the commencement of this action, occupied by the defendant and located by him for the

purpose of using the same in connection with the Green Seal mine. The expression occupied for milling purposes necessarily involves the idea of intention on the part of the claimant to devote the land in the future to that purpose. (Webster's Dic., definition "Purpose.") We occupy public land for mining or milling purposes—*i. e.*, with the intent of using such land for those purposes. The fact of occupation or location is the question. This, however, is a question between the defendant and the government, and the plaintiff can take no advantage of it here.

VI. The land is public unsurveyed land of the United States. If the plaintiff can recover at all, it must recover on the strength of prior actual possession, because there can be no pretense of constructive possession under any statute of the state of Nevada. We are not advised by the pleadings or proofs *when* this land was surveyed, nor for whom it was surveyed, but it is clear that the plaintiff cannot recover upon *any survey*, because none was introduced in evidence, nor was there any testimony offered showing that the plaintiff deraigns any right from any person for whom any survey was ever made. There was no effort to show any compliance with the statute of 1861. (*Rivers* v. *Burbank*, 13 Nev. 410.) Nor with the statute of 1864–5. (1 Comp. L. 78.) But it is claimed that the plaintiff was in possession of a part of the land *mentioned in the complaint* under a deed to the whole, and that therefore his possession extended to the whole tract named in the deed. Our answer to this is, that the doctrine does not apply to public lands, whether surveyed or unsurveyed. (*Wolfskill* v. *Malajowich*, 39 Cal. 280; *Leroy* v. *Cunningham*, 44 Cal. 605.)

VII. The plaintiff has never had any possession of land which would include or embrace the land claimed by defendant. Actual possession of portions of the land, and casual or occasional acts of ownership over other portions, cannot establish the proposition which it is necessary for the plaintiff to maintain, that it was in possession of the larger tract, which would include the land of defendant. (*Sankey* v. *Noyes*, 1 Nev. 72; *Lawrence* v. *Fulton*, 19 Cal. 683; *Staininger* v. *Andrews*, 4 Nev. 67; *Kraft* v. *Carlow*, 9 Nev. 22; *Robinson* v. *Imperial S. M. Co.*, 5 Nev. 66.)

VII. Plaintiff failed to prove the acts necessary to constitute actual possession of the land. (*Sankey* v. *Noyes*, 1 Nev. 71; *Plume* v. *Seward*, 4 Cal. 95; *McFarland* v. *Culbertson*, 2 Nev. 282; *Coryell* v. *Cain*, 16 Cal. 567; *Murphy* v. *Wallingford*, 6 Cal. 648; *Garrison* v. *Sampson*, 15 Cal. 93; *Hutton* v. *Schumaker*, 21 Cal. 454; *Polack* v. *McGrath*, 32 Cal. 15; *Lechler* v. *Chapin*, 12 Nev. 73; *Eureka M. Co.* v. *Way*, 11 Nev. 175; *Brumagin* v. *Bradshaw*, 39 Cal. 25; *Sander* v. *McMillan's Heirs*, 4 Dana 456.)

*Robert M. Clarke*, for Respondent:

I. Neither upon the findings nor upon the evidence has the defendant any standing before the court. He does not pretend to have any right, except under and by virtue of his application for a patent. But the proofs clearly show that the land claimed by defendant was not used or occupied by him for milling purposes, or for that matter, for any purpose; on the contrary the proofs show that the land was occupied by plaintiff. It is not enough that defendant claimed the land for a mill or furnace site. It must appear that he actually occupied or used it for milling purposes. (Mining Act, May 10, 1872, sec. 15; Rev. Stat. sec. 2324.)

II. The plaintiff being in the actual exclusive possession of part of the land in controversy, and having entered into possession of that part, claiming the whole under a deed, is entitled to the whole against one not in possession. Its deed gives it constructive possession of the entire tract. (*Russell* v. *Harris*, 38 Cal. 426; *Walsh* v. *Hill*, 38 Cal. 482.)

III. Except that part of the land which was actually enclosed with a substantial fence, the balance was unfit for cultivation, and was valuable for mill sites only, and for the water which rises upon it. No fence or substantial inclosure was necessary to the enjoyment of that part of the land not cultivated. The cultivated land was inclosed. As to that part not susceptible of cultivation, it was only necessary to make the boundaries so that they could be easily traced. (*McFarland* v. *Culbertson*, 2 Nev. 282; *Eureka M. Co.* v. *Way*, 9 Nev. 349; *Eureka M. Co.* v. *Way*, 11 Nev. 171; *Rogers* v. *Cooney*, 7 Nev. 213; *Courtney* v. *Turner*, 12 Nev. 345.)

IV. The application for a patent is not made in good faith, but is made for the benefit of Clark, who paid all the expenses, and it is therefore a fraud upon the law.

By the Court, LEONARD, J.:

This action was brought under section 256 of the civil practice act, to determine conflicting claims to real property.

Plaintiff is a corporation, and its business is mining and milling in this state, and especially in Eureka mining district.

In the complaint it is alleged that plaintiff is, and since a long time prior to February 5, 1879, has been, the owner, in possession, and entitled to the possession of the following-described land in Eureka county, in this state, to wit: "That certain piece or parcel of land consisting of one hundred and sixty acres, commencing at the southerly line of the survey made and recorded by W. O. Arnold, and running thence one mile in a southerly direction to a fence above the spring of water, and being one-quarter of a mile in width, and known as 'Wilson ranch,' having been surveyed and recorded in accordance with the laws of the state of Nevada, and of record in book of surveys of Lander county, state of Nevada, No. 1, page 77, of the transcribed records now in recorder's office of Eureka county."

It is then alleged that on the fifth day of February, 1879, under an act of congress entitled "An act to promote the development of the mining resources of the United States," approved May 10, 1872, defendant made and filed, under oath, an application for a patent to five acres of land, as a mill site, which is described by metes and bounds; "that defendant claims an adverse title to the premises and land first described above to that of plaintiff, and that said claim of title of defendant is without any right, and that the land claimed in said application is a portion of the premises first above described, and that such assertion and claim are a cloud upon plaintiff's title thereto."

In his answer defendant denies that plaintiff is, or ever has been, the owner, in the possession, or entitled to the possession, of the premises described in the complaint, or that defendant's claim of title to the five acres, for which he has applied for a

patent, is without right, or that the same is a cloud upon plaintiff's pretended title, or any title, thereto; but he disclaims having any right or title to any portion of the premises first described and claimed by plaintiff in his complaint, except that part thereof for which he has applied for a patent from the United States government as a mill or furnace site.

He admits, therefore, that the land in controversy is a part of the premises first described in the complaint—that is to say, one hundred and sixty acres of land, one mile in length by one-fourth of a mile in width, between the points stated, known as the "Wilson ranch." It was unnecessary, then, to prove that the mill site claimed by defendant was embraced in the tract described and claimed by plaintiff; or, in other words, that there was a conflict of title between plaintiff and defendant as to the mill site.

The cause was tried by the court without a jury, and the court found as facts that then, and on the fifth day of February, 1879—the date of defendant's application—plaintiff was, and for five years prior to said date, plaintiff and its predecessors in interest had been, the owners, and entitled to the possession of the premises described in the complaint, and known as and called the "Wilson ranch," consisting of one hundred and sixty acres, more or less; that on the fifth day of February, 1879, the plaintiff was in possession of the lands known as the "Wilson ranch;" that said premises were enclosed with sufficient fence or stakes so that the boundaries thereof could be readily seen and readily and easily traced, and had been so marked out a long time prior thereto; and that the land for which defendant made application for a mill site is and was included in the premises first described in the complaint, and known as and called the "Wilson ranch," and was in the possession of plaintiff, as set forth, on the fifth day of February, 1879.

Judgment was entered for plaintiff to the effect that defendant had no estate, right, title or interest in the premises first described in the complaint, and especially to that portion thereof for which he had made application for a patent as a mill site; also, that plaintiff had a good and valid title to all of the premises first described in the complaint, and defend-

ant was enjoined from asserting any claim whatever thereto adverse to plaintiff.

No additional findings were requested by either party.

Defendant moved for a new trial, on the grounds that the evidence was insufficient to justify the findings and judgment, and that the findings and judgment were against law.

He appeals from the order overruling his motion, and from the judgment.

The case is presented by the record in a very unsatisfactory manner. The statement on motion for a new trial purports to contain all the evidence; and yet there was a map used on the trial to which the witnesses made constant reference in giving their testimony.

The testimony shows that plaintiff has a furnace, several houses, wire and other fences, on the premises claimed by him, the Wilson ranch, as well as tunnels, shafts and cuts made by it for the purpose of collecting water. The latter are at the south end, where we conclude the premises in controversy are situated.

But it is difficult, if not impossible, to ascertain from the record the situation of many of the fences and other improvements. For instance, Reed testified: "The red line on plaintiff's map marks the exterior boundaries of the ranch. There is a line of posts, a furrow and wire fence extending from A to B. There are inclosures within the exterior boundaries of the wire fence, marked blue. The yellow shows the exterior boundaries of the desert land survey. The green shows the mill site applied for by defendant. * * * The dotted lines on the map show the roads. The black lines show the ravines and canyons. I was around the exterior lines in 1875. There was a line of posts and a furrow, except in one place, marked 'bluff,' where there is a steep limestone bluff and a wire fence between points A and B. The line could be easily seen and readily traced. The lines marked 'wire fence,' inside the exterior lines, was a wire fence. The blue lines, near the mill site, indicate a wire fence. The improvements on the ranch are the Roselyn furnace and four houses, and a number of shafts, tunnels, etc. * * * There is a ditch along a portion of the south end, from E to F."

We are unable to say where many of these improvements are situated.

In its opinion the court says: "The testimony established, without contradiction, that the exterior boundaries of plaintiff's claim were distinctly marked by posts, furrows and post holes, except for a short distance across the canyon, at the south side of plaintiff's and defendant's claim;" and that, as to such part, the testimony was conflicting; that as to that portion, plaintiff's testimony showed there was a wire fence until about a year prior to the trial, when it was broken by a flood, but that the posts and a ditch remained, by which the line could be readily traced.

By means of the map the above facts may have been plainly shown to the court. In the absence of the map, the expressions of the witnesses are indefinite, and any doubt must be resolved in favor of the judgment. (*Cohen* v. *E. & P. R. R. Co.*, 14 Nev. 390.)

Except on the hillsides, at the public roads, and the point where the flood of 1878 broke the fence, on the south side, it may have been fully proven, with the aid of the map, that plaintiff's claim was plainly marked by fences, posts and ditches.

Mr. Wescoatt testified for defendant:  *  *  *  "When I made the survey for the mill site I noticed a fence, but none on the line of survey for the mill site. The survey for mill site did not cross any inclosure. I noticed a number of fences there, but none on the line of the survey for Stephenson's mill site, except on the southerly side. There was one on that side the whole distance. · There was a post of the mill site survey on the outside of this fence. I think it did not cross any inclosure. There are a good many posts in different directions in that section. I mean fence posts running in different directions."

Counsel for appellant says the only questions in the case are these: "Did the plaintiff, at the commencement of this action, have title or right of possession to the lands described in the complaint as the 'Wilson ranch,' and is the mill site a portion of or embraced in said ranch?"

The last, as we have seen, is answered by the pleadings.

He says, also, that plaintiff has never had, and particularly when this action was commenced, or at the time defendant's rights accrued, any possession of land which would include that claimed by defendant.

We agree with counsel when he asserts that, in order to determine whether, on the fifth day of February, 1879, and at the commencement of this action, plaintiff had the possession and the right of possession of land which included the mill site in dispute, it is necessary to ascertain the character of the land first described in the complaint, because the acts which are necessary to maintain possession of different characters of land, are as different as are the characters of land and the uses for which it is enjoyed and possessed.

It is claimed for defendant that the Wilson ranch is agricultural land; and it is said that the question whether plaintiff has performed such acts in and about the same as to give it actual possession thereof, must be determined from this standpoint.

That a part was fit for cultivation, and at times has been cultivated—say fifteen or twenty acres—is uncontradicted. But this, at least, was inclosed with substantial fences. The balance was hillside, that has never been cultivated, and, so far as the record shows, is unfit for cultivation. Nor does it appear that it possesses any value for grazing purposes.

Read says: "The valley portion would be good for cultivation—the hillsides would be good for furnace sites."

Powell, who had been in charge of the property for plaintiff subsequent to 1875, said: "Run a tunnel for water seven hundred and fifty-six feet; also, an open cut. Run a tunnel to concentrate and get the water. * * * The Hamburg company has been working and developing mines in this district since 1875. The southeast portion, in blue, has been worked for water more than anything else. This is the best place to collect water that comes down the canyon.

"The Hamburg company has expended about six thousand dollars on this part of the ranch. * * * It has used this property mostly for the water, and had a survey for a furnace site. Taking into consideration the business of the company,

it is valuable to it for water. All the bottom land on the southerly end of the ranch is good for water, and is marshy. You can find water by running into the hill. The company has run five or six tunnels, seven hundred and fifty-six feet, and an open cut one hundred feet long, over the land embraced within the land at the south end, and in all of them we have found water. In the development of its mines during the last four and five years the company has expended two or three hundred thousand dollars."

There was testimony that years ago cattle were accustomed to run over the ranch, but there is no evidence that the hillsides are valuable for grazing purposes.

The business of the company is mining and milling. It is not engaged in stock raising, nor has it cultivated the valley portion, except to raise a few vegetables and a little hay to be used, evidently, in aid of its principal business. Considering the use for which this land is claimed and enjoyed by plaintiff, and for which it is most valuable, an actual inclosure of the entire tract would have been useless.

It would have served no valuable purpose. (*Rogers* v. *Cooney*, 7 Nev. 217.)

Such was undoubtedly the view of the court below, and we think its conclusion was correct. It is unnecessary to say more as to plaintiff's rights, but it is proper to remark that neither the findings nor the proofs show that defendant's claim has any merit.

The United States statute of May 10, 1872, provides that " when non-mineral land not contiguous to the vein or lode is used or occupied by the proprietor of such vein or lode for mining or milling purposes, such non-adjacent surface ground may be embraced and included in an application for a patent for such vein or lode, and the same may be patented therewith, subject to the same preliminary requirements as to survey and notice as are applicable under this act to veins or lodes." * *

Defendant makes no claim of right or title to the land in dispute, except such as results from his application for a patent for a mill site. There is no evidence showing that he ever made an application for a patent to the Green Seal mine or any mine, or that the application for a patent to the mill site

was included in an application for a patent to any non-contiguous vein or lode.    There are no findings upon these points, and the only testimony concerning them is as follows.    Dewey testified:    " I had a conversation with defendant, Stephenson, a few days ago.    He told me he was not applying for a patent for himself for the mill site; that he was about to apply for a patent to the Green Seal mine, and Clark asked him to apply for the mill site; that he did it for Clark, and Clark paid all the expenses."

Wescoatt testified that he " made survey for the mill site and for the Green Seal mine together; that he placed the notice for an application for a mill site in a prominent place on the mill site, as required by law."

It was admitted as a fact that defendant was the owner of the Green Seal mine, in Eureka mining district, when he applied for a patent to the mill site.

It cannot be gathered from the foregoing that the defendant embraced in his application for the mill site an application for the Green Seal or any mine non-contiguous thereto; and he does not claim that he is " the owner of a quartz mill or reduction works, not owning a mine in connection therewith."    (Rev: Stat. U. S., sec. 2,337.)

Again, the testimony is uncontradicted that defendant admitted Clark to have been the real party in interest as to the mill site, and that the application for a patent thereto was not made in good faith for himself.

The judgment and order appealed from are affirmed.