# SUPREME COURT

OF THE

## STATE OF NEVADA,

### JANUARY TERM, 1872.

7 213
13 404
17 459
30†1090
19 412
14* 351

JOHN L. ROGERS *et al.*, RESPONDENTS, *v.* MARTIN COONEY, APPELLANT.

ONLY POSSESSION REQUISITE TO MAINTAIN TRESPASS. In an action of trespass upon land, it is only necessary for the plaintiff to prove a rightful possession in himself; it is not incumbent on him to establish any title beyond that.

"TAILINGS" CLAIMS ANALOGOUS TO MINING CLAIMS. If land be valuable only for the metals which it may contain, such as land on which tailings have been deposited, and it is not claimed for any other purpose, the acquisition of a possessory title to it is governed by the same rules ordinarily controlling possessory titles to mining claims.

POSSESSION OF LAND VALUABLE ONLY FOR TAILINGS. Where a person entered upon vacant land, upon which tailings were deposited, for the purpose of digging them up, hauling them away and milling them, and caused a survey to be made and recorded, marked the boundaries with large posts firmly set in the ground at the corners and one in the center of one of the sides, and thereafter continued to work the claim and built a cabin on it, which was used for storing the tools employed on the premises: *Held*, that he had a possession sufficient to maintain trespass against an intruder entering within his boundaries.

Rogers v. Cooney.

DISTINCTION BETWEEN POSSESSION OF MINING CLAIM AND POSSESSION OF FARM-ING LAND. The same acts which are required to enable a settler to obtain actual possession of pasture or agricultural land, so as to subject it to the purpose for which it is useful, are not demanded when the claim is only of mining ground.

FENCING NOT NECESSARY TO POSSESSION OF MINING CLAIM. Fencing a mining claim would serve no useful purpose except to mark its boundaries; and any other means which will accomplish that object will equally answer the requirements of the law as to the possession of such a claim.

TAILINGS REMOVED FROM LAND IN POSSESSION OF ANOTHER. Where a plaintiff was found to have the possession of certain land upon which tailings were deposited, and defendant to have intruded and removed a portion of such tailings : *Held*, that plaintiff's right to the tailings was coextensive with his right to the land.

ARGUMENTS ON APPEAL OUTSIDE OF RECORD. The Supreme Court will not consider questions argued before it, when the facts and proceedings upon which such arguments are based are not brought up in the record or properly presented.

APPEAL from the District Court of the Third Judicial District, Lyon County.

The claim taken up by the plaintiffs, John L. Rogers, Richard Trotter and John R. Rogers, consisted of a tract of land containing one hundred and twenty-two acres in Lyon County. The facts are stated in the opinion.

*R. M. Clarke*, for Appellant.

I. Plaintiffs cannot recover upon the weakness of defendant's rights; but must recover, if at all, upon the strength of their own. Unless the tailings sued for were the property of plaintiffs, judgment must go for defendant, because the defendant had reduced such tailings to his possession by gathering them up and hauling them away.

II. Plaintiffs have shown no paper title nor any possessory right to the land. They did not comply with the requirements of the possessory act; nor did their acts, independently of the statute, constitute a possessory right. *Sunol* v. *Hepburn*, 1 Cal. 262; *Kile* v. *Tubbs*, 23 Cal. 431; *Coryell* v. *Cain*, 16 Cal. 567; *Garrison* v. *Sampson*, 15 Cal. 95; 21 Cal. 454; 32 Cal. 15; *Sankey* v. *Noyes*, 1 Nev. 68; 2 Nev. 280; *Staininger* v. *Andrews*, 4 Nev. 59; *Robinson* v. *The Imperial Silver Mining Co.* 5 Nev. 44.

III. Before deposited on the land, the tailings were personal property. Gathering them into piles severed them from the realty, reduced them to possession, and changed their character from real to personal property. Of course, this is only true as to the persons acquiring right at the severance. But as to such persons, there can be no more doubt about the ownership and right to remove, than in the case of growing trees felled and manufactured into wood. 11 Cushing, 11; 5 Nev. 81.

IV. In the progress of the suit the defendant violated the injunction, and thus put himself in contempt. For this contempt he was arrested and punished, and in the proceeding a receiver was appointed and put in charge of the tailings removed, pending the suit. And in this case, without amended or supplemental complaint or trial, the court adjudged the plaintiffs to own the tailings said to have been wrongfully removed, and ordered the receiver to deliver them into the possession of the plaintiffs. This also was error.

*Ellis & King*, for Respondents.

I. Plaintiffs have shown a good and valid appropriation by them of the premises and property in controversy, by having done such acts as confer a mining right upon them, according to the well recognized rules concerning appropriation of mining claims.

II. It is admitted the ground was valuable only for the tailings upon it, or in a qualified sense as a mining claim. Under such circumstances, what, more than plaintiffs did, could be required under the law to confer a mining right? It was not necessary to fence. *McFarland* v. *Culbertson*, 2 Nev. 282; *English* v. *Johnson*, 17 Cal. 107.

III. If plaintiffs acquired and had possession of the premises and property for mining purposes, as claimed by us, this is a full and complete answer to the position of defendant as to the severance and removal of the tailings. *Whitman Co.* v. *Baker et als.*, 3 Nev. 387.

IV. As to the proceedings on contempt and as to the receiver,

there is not, nor does there purport to be, any account or history in the record.

By the Court, LEWIS, C. J.:

Trespass for entering upon a tract of land and removing there from certain tailings claimed by the respondents. The judgment below was for the plaintiffs, awarding to them eight hundred dollars damages, and enjoining the defendant from a repetition of the acts complained of. The learned judge below found that upon the twenty-first day of March, A. D. 1870, the plaintiffs entered upon the land in question, which is a long narrow tract, upon which the tailings were deposited; caused a survey thereof to be made and recorded, and marked the boundaries by red posts firmly set in the ground at each corner, and one in the center of the south boundary line; that continuously thereafter they have been engaged in digging up, hauling away, and milling the tailings deposited thereon; that in August, A. D. 1870, they built a small cabin within the boundaries designated, using it for storing the tools employed by them on the premises and for other purposes; that they had applied to the proper state authorities to purchase a portion of the land; deposited the consideration therefor, and also received from the Central Pacific Railroad Company a contract whereby it agreed to convey to them the residue as soon as it should receive a patent therefor from the government, the land being within a section granted to that corporation by the Act of Congress of July 1st, 1862. On the seventh day of December, the defendant entered upon the land and began to remove the tailings, and before the suit was brought had removed about two hundred tons, valued at four dollars a ton. Shortly after his entry upon the premises, he also made application to the state to purchase that portion of the land upon which the trespass was committed. Neither he, nor the plaintiff, however, had acquired any title thereto from the state at the time of trial. The claim which he made to the land, years before the time of this trespass, appears to have been abandoned, and is therefore of no weight in this case. The court finds, also, that the land in question was utterly useless, and of no value except for the tailings deposited on it.

Rogers *v.* Cooney.

This is also admitted by the parties.   No title to the tailings is claimed by either party, beyond that which may have been acquired by the attempts to obtain title to the land upon which they were located, or their actual reduction to possession, they having been brought down in the stream from the quartz mills above and deposited on the land in question by the water running over it, forming a stratum upon its surface and becoming a part of the soil itself. The question then is, which of these parties had the best right. As the trespass does not seem to have been committed on that portion of the land agreed to be conveyed by the Central Pacific Railroad to the plaintiffs, and as neither party appears to have acquired any title from the state to that portion upon which it was committed, what right or title the plaintiff acquired by means of this contract with the Central Pacific Railroad and from the state by the application to purchase, and the deposit of the purchase money may be left out of the case.   Let us ascertain then, what right he had, independent of these facts.

It must be borne in mind throughout the case, that in an action of trespass it is only necessary for the plaintiff to prove a rightful possession in himself; it is not incumbent on him to establish any title beyond that.   The right of property may be either in the government or a third person.   In either case where the controversy is between persons neither of whom claims the real title, the question turns simply on the best right of possession.   The plaintiff, therefore, in such action is only called upon to prove that the property was rightfully in his possession as against the defendant at the time of the acts complained of, and that the defendant committed the injury.   Does the proof in this case bring the plaintiffs within the rule?   It is argued not; that they had acquired no such possession of the land in question as to entitle them to its possession as against the defendant.

It is admitted by the parties, and so found by the court below, that the land in question is of no value except for the tailings, and that they are valuable only for the gold and silver which they contain.   So it is manifest from the evidence that neither plaintiffs nor defendant claimed the land for any purpose except that of securing such tailings; in other words, it is claimed by them for mining

purposes only. Although not a mining claim, within the strict meaning of the expression as generally used in this country, still it is so closely analogous to it, that the propriety of subjecting the acquisition and maintenance of the possession of it to the rules governing the acquisition of the right of possession to a strictly mining claim, at once suggests itself. The only value attached to the land results from the precious metals which may be obtained from it. What the difference how these metals may have been deposited there, so far as a case of this kind is concerned? It is distributed through a certain stratum of earth, which must be dug up and put through a certain milling process, as in case of any ordinary metalliferous earth. If the land be valuable only for the metal which it may contain, and it is claimed by neither party for any other purpose, the acquisition of title to it should manifestly be governed by the rules ordinarily controlling the acquisition of title or the right of possession to mining claims. We do not pretend to hold the land here in question to be mineral land, but only that it is so clearly analogous thereto, that the laws controlling the possession of one should also govern the other. Under those rules the plaintiffs had an undoubted possession, sufficient to enable them to maintain trespass against any person entering within their boundaries, except such as would show a better right. It is the suggestion of justice and the clearest reason, that the same acts which are required to enable a settler to obtain actual possession of pasture or agricultural land, should not be demanded where the claim is only of mining ground. In the first case, fencing is often indispensable to completely subject the land to the purposes for which alone it is useful. Hence it is generally held that such acts must be performed as will bring it within this rule of utilization. But fencing a mining claim would be an utterly useless act. It would in no wise improve its value, and would often be a mere incumbrance; it would not in the remotest manner further the purpose for which alone the land is valuable. The rule requiring fencing and improvement is a rule of utility, requiring the land to be subjected to the purposes for which it is useful; but the reason for requiring such improvements in respect to agricultural lands has no application to a mining claim, nor to land like this, which is valuable only for mining purposes.

Rogers v. Cooney.

It has therefore been uniformly held that fencing is not necessary ; that to do so could serve no purpose except to mark the boundaries ; and any other means which will accomplish that object will equally answer the requirements of the law.    Thus in *English* v. *Johnson*, 17 Cal. 107, the court decided that possession taken of a mining claim without reference to mining rules was sufficient, as against one entering by no better title, to maintain an action ; and that such possession need not be evidenced by actual enclosure, but if the claim be included within distinct, visible and notorious boundaries, and if a portion of it is worked within such boundaries, it is sufficient against one entering without title.    So it was held that going on land to work it, or even work done in proximity and in direct relation to the claim, for the purpose of extracting or preparing to extract minerals from it, as starting a tunnel a considerable distance off to run into the claim is a sufficient possession of the claim.    Say the court :  " The question arises as to the extent of the possession of the first taker, and the rules which determine this question.    In mining claims, we require no other acts as evidence of possession than those usually exercised by the owners of such claims.    A miner is not expected to reside upon his claim, nor to build upon it, nor to cultivate the ground, nor to enclose it.    The claim is usually of 'a small strip of land compared with the extent of the ground generally taken up for agricultural purposes.    Its only value is in working it and extracting minerals.    Going on the land to work it, or even work done in proximity, or preparing to extract minerals from it, as for example, starting a tunnel a considerable distance off to run into the claim, would be a possession of the claim within the meaning of the rule.    *   *   *    But we think where a claim is distinctly defined by physical marks that possession taken for mining purposes embraces the whole claim thus characterized, though the actual occupancy or work done be only on, or of, a part, and though the party does not enter in accordance with mining rules or under a paper title.    The rule which applies to agricultural land, and holds to a more strict interpretation of a *possessio pedis*, does not apply to such a case.    Inclosure, if not impossible, besides being probably hurtful to other interests and rights, would be wholly useless.    It would give no greater or better advertisement of the

extent of the claim than those physical signs, nor give any better protection to the premises against intrusion, or show any higher power of dominion." This doctrine was affirmed in *Table Mountain Tunnel Co.* v. *Stranahan*, 20 Cal. 199, and again in *Hess* v. *Winter*, 30 Cal. 349, and is clearly the doctrine always recognized in this state.

It does not seem to be questioned but the plaintiffs had designated the boundaries of this claim by distinct physical marks. They had placed large posts painted with a red color at its several corners, and also an additional one in the centre of the south line. But as there appears to be no question in the case as to the fact that the boundaries were marked by distinct visible monuments, it is unnecessary to discuss the question further. Their possession was, therefore, all that was required, and was sufficient to enable them to hold and protect it. With this view of the case it is unnecessary to decide what right or title, if any, the plaintiff acquired by means of the contract with the railroad company. Nor can it be claimed that the defendant acquired any right or title to the tailings gathered together, or, as it is claimed, severed from the land by him whilst the plaintiffs were in the rightful possession of the premises, for their right to the tailings was coextensive with their right to the land. And as we have shown they had such right and possession at the time of the entry of defendant, they had an equal right to and possession of the tailings.

The only remaining question argued in this court arises out of the action of the court below in placing a receiver in possession of a certain quantity of the tailings, removed in violation of a restraining order, and subsequently adjudging the title to the same to be in the plaintiffs. None of the proceedings had in the appointment of the receiver, and none of the evidence touching the removal of the property in violation of the order of court, appear in the record. Under such circumstances this court does not feel warranted in attempting a review of the action of the court below, as it would be compelled to do so with no satisfactory information of the facts upon which its action was taken. However, if we were allowed to act upon the facts as related in the brief of counsel for appellant, we should not hesitate in holding that the court below was fully

justified and warranted by the law in summarily restoring all prop-
erty to the plaintiff which it was found upon the final hearing be-.
longed to him, and which had been removed or taken possession of
by the defendant in contempt of an order against him enjoining any
such interference with it.

Judgment below must be affirmed, and it is so ordered.