NORTH NOONDAY MINING Co. *v.* ORIENT MINING Co.

*(Circuit Court, D. California.*    October 6, 1880.)

1. NEW TRIAL—ERROR WITHOUT INJURY.
    Where, upon the whole record, the court can clearly see that no injury resulted from an error which has intervened in the course of the trial, a new trial should not be granted.
2. MINING CLAIM—PROOF OF CITIZENSHIP.
    The affidavit of the party locating a mining claim is admissible in evidence to prove his citizenship.
3. SAME—ACTUAL POSSESSION—ACTION AGAINST TRESPASSER.
    The person in actual possession and occupation of a mining claim of no greater extent than the laws allow him to hold, and who is actually engaged in working the same, has sufficient title to maintain an action against a trespasser, although he may not have taken up and held the claim in all particulars in the mode required by law.

*Stewart, Van Clief & Herrin,* for plaintiff.
*R. M. Clark* and *George B. Merrill,* for defendant.

SAWYER, C. J.. All the points made, by defendant on motion for new trial were fully argued and considered at the trial, and I see no good reason for changing the rulings then made. The point most confidently relied on by defendant seems to be the admission of the affidavit of Smith to prove his citizenship. I am not entirely certain that any other evidence was necessary to raise the presumption of citizenship than the fact that he had resided in the United States from his infancy,—during all the period of his remembrance,—he having no personal knowledge of having been alien born, and no recollection of ever living elsewhere; and there being no evidence. from any one having knowledge that he was foreign born. If this be so, then there is no evidence to overthrow the presumption, other than his statement that he was informed that he was born in Ireland, and brought to this country by his parents when two years old; and this is but hearsay; and his counter-statement that he was informed in the same manner and had always understood that his father became naturalized while he was a boy, is, at least, as good. If the hearsay evidence was inadmissible and proves nothing upon the one point, it was equally so on the other. It must all be taken or all be rejected together. But if it was necessary to make this additional proof, the affidavit was, undoubtedly, inadmissible upon the general principles of evidence unaffected by statutory provisions.

The statute, however, has made especial provisions for such cases in section 2321, which says: "Proof of citizenship under this chapter may consist, in the case of an individual, of his own affidavit thereof; in the case of an association of persons unincorporated, of the affidavit of their authorized agent, made on his own knowledge, or upon information and belief." This provision must of necessity contemplate an affidavit to some extent based on information and belief, for no man can, of his own personal knowledge, state where he was born. It is an event occurring before he has accquired a capacity to remember. It also substitutes an affidavit for the record in this case of one having been naturalized. It also contemplates an affidavit on information and belief, where the naturalization of persons other than the party making the affidavit are concerned, for the affidavit of the "authorized agent" of associations not incorporated may be "upon information and belief." It might be utterly impracticable for a person whose father had been naturalized and moved to some distant territory, and died during his infancy, as is supposed to be the case in this instance, to ascertain in which one of the hundreds of courts in the United States, having jurisdiction, the father

was naturalized. At all events, in view of the practical difficulties in making the proofs, or for some other reason, the statute has modified the rule of evidence in this instance, and made such affidavits not only competent, but sufficient proof of citizenship; for it requires no other. It is insisted, however, that this is admissible only in the land-office for the purpose of entitling the locator to a patent, but does not extend to suits between private parties respecting the right to the claim. But the statute say *"under this chapter,"* and the chapter provides for sending the parties to the courts to try their rights when there are conflicting claims; and in my judgment the provisions apply to all the purposes of the act—to the litigation of all claims arising under the act, whether in the department, or in the ordinary courts of the country. Evidence which is competent and sufficient to establish a right to a patent to a mining claim as against the government—the actual owner of the land and mine—ought to be competent and sufficient to maintain the party complying with the statute in his possession and claim against a stranger trespassing upon his possession and claim, which would be otherwise recognized as valid by the statute as against the government. I do not think congress designed to establish one rule of evidence or right for the government and another for citizens, as to the same claim arising under the statute, and especially in favor of trespassers upon the possessions of others. I therefore hold the affidavit of Smith to be competent evidence, and properly admitted under the statute.

But conceding, for the purposes of this decision, the admission of the affidavit as to citizenship to be erroneous, still, in view of the other uncontradicted testimony in the case, the error became immaterial. It appeared by clear, uncontradicted, positive testimony that the plaintiff's grantors, some, at least, of whom were citizens before defendants entered, or began to run their tunnel, distinctly marked the three claims, limiting the Noonday North to 100 feet wide, by stakes driven at each corner and the center of the end lines, the stakes being three and a half feet high by four inches square, painted white and lettered, to show what they were and what claims they indicated, each claim so staked out being 100 feet wide and 1,500 long, lying side by side, and within the limits of the lines of the original Noonday North as located 300 feet wide on each side of the center. These stakes bounded a parallelogram 300 feet wide by 1,500 long, marked by a line of five stakes, as described, on each end. These claims were conveyed to the plaintiff by one and the same deed, giving definite descriptions, and plaintiff went into actual possession and occupation

of them, claiming title under the deeds up to the extreme boundary as staked off, long before defendant entered, and they so continued on the claims, erecting machinery and sinking shafts for working the claims, down to and at the time of defendant's entry and the trespass complained of, having, at the time of such entry and trespass, expended in labor and the collection of materials on the premises the amount of some twenty-five or thirty thousand dollars. So that before defendant acquired any rights, and down to and at the time of defendant's entry, the plaintiff was in the actual, active, dominating possession, occupation, and control of the premises thus marked out and thus conveyed, claiming the whole under the conveyance. Plaintiff's said stakes were still there, as described, when defendant entered and committed the trespass complained of, and defendant made its claim within the claims so at the time staked out. As to the extent of the possession of parties actually in possession claiming under deeds and up to marked boundaries, see *Hicks* v. *Coleman*, 25 Cal. 122, and the numerous cases from the United States supreme court reports therein cited. *Walsh* v. *Hill*, 38 Cal. 487.

The plaintiff, before defendant acquired any rights, and at the time of its entry and of the trespass complained of, was in as complete actual possession and occupation up to the boundary indicated by their stakes as it could well have been, except by enclosing it with a fence sufficient to exclude trespassers. The plaintiff was there physically present, by its agents, in active labor and control. This being so, independent of such constructive possession as the mining laws give by simple compliance with its provisions, there was a continual actual possession and occupation upon which defendant could not enter without being a trespasser. The supreme court of California held that a mining claim in actual possession of the claimants is valid, irrespective of mining laws. *English* v. *Johnson*, 17 Cal. 107; *Table Mountain Tunnel Co.* v *Stranahan*, 20 Cal. 209; S. C. 31 Cal. 390; *Hess* v. *Winder*, 30 Cal. 355; *Rogers* v. *Cooney*, 7 Nev. 219. These cases have been cited and approved by the supreme court of the United States in the recent case of *Campbell* v. *Rankin*, 99 U. S. 262. As I understand the recent decisions of the supreme court of the United States, under the pre-emption laws no man can initiate a pre-emption, or other right under those laws, by an entry upon the actual possession of another, be that other a competent pre-emptioner, or rightfully in possession, as against the government or otherwise. *Trenouth* v. *San Francisco*, 100 U. S. 251, 256; *Atherton* v. *Fowler*, 96 U. S. 513. If that be so, the principle is equally applicable to

rights acquired in mining claims. It would be strange indeed if congress should pass laws to encourage trespasses and breaches of the peace, by authorizing a title to be initiated and founded upon a trespass upon the actual possession of another.

Upon the whole record I am entirely satisfied that a new trial should not be granted, even if there was error in admitting the affidavit of Smith, and the several other affidavits to which exception was taken in the course of the trial, on the question of citizenship. On this view, also, errors in other rulings, if any there be, become immaterial.

Ordered that a new trial be denied.

See 1 FED. REP. 522.