SILVER PEAK MINES v. VALCALDA et al.

(Circuit Court, D. Nevada. April 5, 1897.)

No. 618.

1. WATERS AND WATER COURSES—APPROPRIATION OF SPRINGS ON PUBLIC LANDS.

In appropriating the waters of a spring upon public lands, only such acts are necessary, and such indications and evidences of appropriation. required, as the nature of the case and the face of the country will admit of, and as, under the conditions and circumstances at the time, are practicable to accomplish the purpose of the appropriator in making a beneficial use of the water.

2. SAME.

In an action of ejectment, involving the plaintiff's right, as against the defendant, to the waters of springs upon public land located by the plaintiff as a mill site in connection with a mine,—the right depending upon the prior appropriation, occupation, and use,—the jury were not called upon to determine what was necessary for plaintiff to prove in order to entitle it to a patent; and the court properly charged the jury that the documentary evidence relating to the plaintiff's application for a patent was admitted only for the purpose of explaining the acts and conduct of the plaintiff, and the good faith of its possession of the land in controversy.

3. SAME—LOCATION OF MILL SITE.

In an action of ejectment, involving the right to the waters of certain springs upon public land located by the plaintiff as a mill site,—both plaintiff and defendant claiming under possessory rights,—it was not necessary for plaintiff to show, in order to establish his right, that the water had been used for "mining and milling purposes"; it being sufficient, if actual possession was shown, to prove that the water had been appropriated by it to any beneficial use, as for domestic and culinary purposes.

This is an action of ejectment brought by Silver Peak Mines against Giovanni Valcalda and others. Upon motion for new trial.

M. A. Murphy, for plaintiff.
Robert M. Clarke, for defendants.

HAWLEY, District Judge (orally). This is an action of ejectment to recover possession of certain lands, and the right to the waters of certain springs situate thereon. The land is public land of the United States; neither party at the time of the trial having the legal title thereto, and both claiming the property under possessory rights. The case was tried before a jury, who found a verdict in favor of the plaintiff. The defendants move for a new trial. There are 15 assignments of error, and 11 specifications of particulars in which it is claimed that the verdict was contrary to, and not supported by, the evidence, which are urged and relied

upon in favor of the motion. The evidence in this case was in many respects unusual, extraordinary, and peculiar. Nearly every legal point presented and ruled upon by the court was excepted to, and every proposition of fact advanced by either party was denied by the other. The case, upon the trial, glistened with objections, technical and otherwise. The defendants had located a mill site in connection with a mine, and there was a keen contest as to whether the mill site or the springs claimed by the plaintiff were included in the metes and bounds of the land as described in the plaintiff's complaint. Nearly every witness was vigorously attacked, and his testimony assailed, either by opposing witnesses or by the respective counsel. The jurors were impartial and intelligent. They were accepted without any challenge from either party, and gave close attention to the testimony of the respective witnesses. Unless the court erred in its rulings, the verdict of the jury should not be disturbed. The only question which will be considered upon this motion relates to the right of plaintiff to recover the water of the springs and incidentally as to the land. The rulings of the court upon all other points I am satisfied are correct, and the verdict of the jury is accepted as settling the conflict of evidence upon the facts.

Was there any error of the court upon any point concerning the water rights? It is claimed that the complaint is insufficient, that there is no evidence to sustain the verdict, and that the court erred in refusing to give an instruction asked by defendants. The complaint avers that the plaintiff was on the 16th day of March, 1896, and for over 25 years prior thereto, by itself, its grantors, and predecessors in interest, had been, the owner, lawfully possessed and entitled to the possession, of certain described pieces of land, situate at Red Mountain, in the county of Esmeralda. After averring the unlawful and wrongful ouster of plaintiff by defendants on the 17th of March, 1896, the complaint proceeds:

"That there is situated on said land springs of water, from which the miners employed in working the mining properties belonging to this plaintiff procure their supply of water for domestic and culinary purposes; and the same cannot be had without going a much greater distance from said mining properties, and at an enormous outlay of money in hauling the same in wagons, and the water that can be procured at other places is not of as good quality as that contained in said springs; and the defendants have refused, and still refuse, to permit the agents of this plaintiff to draw water from said springs, to its damage," etc.

This allegation, as to the water right, is imperfectly stated. The defect is, however, more as to a matter of form than of substance. No demurrer was interposed to the complaint. The parties went to trial upon the issues raised by the complaint and answer. The answer denied the averments of the complaint, and set up possessory title in the defendants. Under these circumstances, no objection can now be urged to the form of the averments. The complaint states a cause of action.

With reference to the evidence, in so far as the point under consideration is concerned, it is only necessary to state that it, among other things, shows that the land is nonmineral and non-

agricultural in character, and is situated four or five miles from certain mining lodes owned by the plaintiff; that the Crown Mine, owned by plaintiff, was located February 18, 1888; that on October 1, 1888, the plaintiff, by F. M. Taylor, its attorney in fact, located five acres of the land in controversy, "as a mill site in connection with the Crown Mine, and claims all the water running from springs included in said mill site;" that both locations —mine and mill site—were recorded in the records of the Silver Peak and Red Mountain mining district; that the notice of the location of the mill site and water right was posted upon the ground; that on October 1, 1888, a survey of the mill site was made by a deputy mineral surveyor, and duly recorded in the local land office; that posts were placed in a proper manner at each corner of the land; that work was done by plaintiff in cleaning out the springs and running a tunnel for the purpose of increasing the supply of water at the springs; that application had been made at the United States land office for a patent to the Crown Mine and mill site. In appropriating the waters of a spring upon the public lands, only such acts are necessary, and such indications and evidences of appropriation required, as the nature of the case and the face of the country will admit of, and are, under the conditions and circumstances at the time, practicable to accomplish the purpose of the appropriator thereof in making a beneficial use of the water. This principle is embodied in an instruction which was prepared by defendants, and given by the court in its charge. The court charged the jury, among other things, as follows:

"(1) Under the laws of the state of Nevada, a party in the actual possession may maintain an action of ejectment to recover possession of land from which it has been ousted by a party who does not have the legal title or right of possession thereto. If the plaintiff had actual prior possession of the land, this is enough to enable it to recover from a mere trespasser, who subsequently entered, while the plaintiff was so in possession, without any title. The question of fact for you to determine here is the question of possession. In all cases where a party relies solely upon possession, as in this case, there must be a subjection of the land to the will and control of the claimant. The occupant must assert a claim and exclusive ownership over the land, and his acts must at all times be in harmony with his claim. His possession must be apparent, open, notorious, and unequivocal, carrying with it the evidence and marks of ownership. In this connection I will read you a portion of the instructions asked by the defendants. The plaintiff, in its complaint, sets up a claim to the waters of certain springs, which it is alleged are situated upon the lands described in the complaint touching these springs, and the right to have and use the waters thereof. You are instructed that, the land being public lands of the United States,—the United States not having parted with the legal title thereto,—the right to these springs and the waters thereof depend upon the actual occupancy, control, or appropriation and use thereof; and, as to such springs, you are instructed that plaintiff is not entitled to recover the same, or damages therefor, unless you believe from the evidence that plaintiff was in the actual possession, occupancy, control, and dominion of the land where the springs are situated, or was in the actual possession of the springs, and in the use and enjoyment of the waters therefrom. You should apply the same rule to the springs as you have been instructed to apply to the land. (2) The evidence of acts sufficient to constitute such a possession of public land as will maintain an action of ejectment must necessarily, in a great measure, depend upon the character of the land, the locality in which it is situated, and the object for which the water and land were

taken up and claimed. The law does not require vain or useless things to be done. It requires more to be done in the location of agricultural land than it does of timber or other lands. To illustrate: In order to get the actual possession, within the rules that I have stated, of agricultural land, it would be necessary, in order to comply with the law, that the land should be absolutely fenced, or that it should be cultivated, and the party in possession would only be entitled to such part of it as was in actual cultivation, if not fenced; while in timber land all the law requires is that the boundaries shall be marked * * * in such a manner as that they can be readily traced,— no need of any fence, no need of any cultivation,—in order to give notice to the public, and to show the dominion and control of the claimant. (3) It is not necessary that the land in controversy, which has been designated as the 'Crown Mine Mill Site,' should be inclosed with a fence, or that it should be reduced to cultivation, to constitute possession. If you believe from the evidence that there was a house, stockade, stable, and corral on the said land, erected by the plaintiff in this action, or by those from whom it derived possession of the premises; that the plaintiff at divers times improved the springs upon said land, and in 1888 or 1889 made a claim * * * for five acres of land, and the waters flowing from the spring on the land, as a mill site and water right; that it caused the land to be surveyed; and that posts were placed at each corner of said land, indicating the corners and boundaries thereof, and continued to remain in such possession thereof until ejected by the defendants, if it was ejected, so as to subject the land to its dominion and control, and to notify the public that the land was claimed and occupied,— this would constitute possession of the land."

At the close of the charge, when the court asked if there were any exceptions thereto, exception was taken and allowed to subdivision 3, and counsel for defendants then asked the court to further instruct the jury:

"That, when land is located for a mill site or for milling purposes, the party locating and claiming the same must, within a reasonable time, use the land for the purpose for which the location was made."

The court stated that the instructions, as given, embodied the true rule, and declined to give the instruction asked, as worded. Exceptions to this ruling were duly taken and allowed.

The instructions given by the court as to what facts were necessary to be established in order to entitle a party to recover solely upon actual possession were in accordance with the decisions of the supreme court of Nevada upon that question. Sankey v. Noyes, 1 Nev. 68, 71; McFarland v. Culbertson, 2 Nev. 281; Staininger v. Andrews, 4 Nev. 59, 67; Robinson v. Mining Co., 5 Nev. 44, 66; Smelting Co. v. Way, 11 Nev. 171, 175; Lechler v. Chapin, 12 Nev. 66, 72; Courtney v. Turner, 12 Nev. 345, 352. See, also, Campbell v. Mining Co., 1 C. C. A. 155, 49 Fed. 47; North Noonday Min. Co. v. Orient Min. Co., 11 Fed. 125, 128; Wilson v. Fine, 38 Fed. 789. If the instruction asked for had been given without any further qualification or explanation, it would have tended to confuse, instead of to enlighten, the jury upon the controlling issues in the case. The right to the waters of the springs depended upon the prior appropriation, occupation, possession, and use. Did the plaintiff have such a possession thereof as amounted to its dominion and control over the property? The jury were not called upon to determine what was necessary for plaintiff to prove in order to entitle it to a patent from the United States to the springs of water upon the land located by it as a mill site. The documentary evidence relating to the plaintiff's application for a patent was ad-

mitted, as stated in the charge of the court to the jury, "for the purpose of explaining the acts and conduct of the plaintiff, and its good faith, if any, of its possession of the land in controversy. * * * Such documents, entries, and receipts are wholly insufficient to establish any legal title in either party, and you must exclude them from your consideration for the purpose of establishing any legal title." This instruction was correct. Carter v. Ruddy, 6 C. C. A. 3, 56 Fed. 542, 544. Under the pleadings in this case, in so far as the right to the water of the springs is involved, it was not necessary for the plaintiff to show that the water had been used for "mining and milling purposes." It was sufficient, if actual possession was shown, to prove that the water had been appropriated by it to a beneficial use. The fact that the water was used for culinary and domestic purposes by plaintiff, its agents and employés, was of itself sufficient to establish a beneficial use of the water. The real question was one of fact,—whether the plaintiff, as against the defendants, was entitled to the possession of the land and the springs situated thereon. Upon this question there was a decided conflict in the evidence, which was, under proper instructions from the court, determined and settled by the verdict of the jury in favor of the plaintiff. The rights of the United States in the premises were not in any manner involved. In so far as the laws of the United States had any application to this case, the plaintiff's right to the water of the springs, acquired under the local customs, laws, and the decisions of courts, are recognized by the provisions of section 2339 of the Revised Statutes, which reads as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same."

The laws of the United States as to land located for mill sites provide that nonmineral land, not contiguous to the lode, not exceeding five acres of land, can be appropriated for a mill site by the owner of the lode, and, if the owner of the lode is the applicant for the mill site in connection therewith, the expenditure of the required amount of money on the lode claim obviates the necessity of any additional expenditure on the mill site. Rev. St. § 2337; Sickels, Min. Dec. (1881) 464; Hartman v. Smith, 7 Mont. 19, 14 Pac. 648. This, as before stated, was not an action to determine whether or not either party, upon the facts, was entitled to a patent; and for that reason the court declines to review the cases cited by counsel, namely: Charles Lenning, 5 Land Dec. Dep. Int. 190; Cyprus Mill Site, 6 Land. Dec. Dep. Int. 706; Iron King Mine & Mill Site, 9 Land Dec. Dep. Int. 201; Mint Lode & Mill Site, 12 Land Dec. Dep. Int. 624. What constitutes the use of land as a mill site "for mining and milling purposes," under the provisions of section 2337, Rev. St., so as to entitle a party to a patent, is a mixed question of law and fact. In Hartman v. Smith, supra, the court said:

"The statute does not mention any particular kind of mining purposes for which it shall be used; and therefore, if used in good faith for any mining purpose at all, in connection with the quartz lode mining claim, such use would be within the meaning of the statute. It is certainly not intended that it shall be used for such work as is done upon the mine itself; for the land must be nonmineral, and not adjacent to the mining claim. We cannot say. under this statute, what shall be the extent of the use,—whether much or little,—or the particular character of the use. The phrase 'mining purposes' is very comprehensive, and may include any reasonable use for mining purposes which the quartz lode mining claim may require for its proper working and development. This may be very little, or it may be a great deal. The locator of a quartz lode mining claim is required to do only a hundred dollars worth of work each year, until he obtains a patent therefor. But if he does only this amount, and uses the mill site in connection therewith, is not this the use of the mill site for a mining purpose, in connection with the mine? Who shall prescribe what shall be the kind and extent of the use under this statute, so long as it is used in good faith, in connection with the mining claim, for a mining purpose?"

It will be time enough when the government is called upon to dispose of its title to determine the dignity and character of the evidence that must be presented by the applicant in order to obtain a patent, whether such determination is made by the courts or in the land department.

After a careful examination of all the questions involved in this case, I am of opinion that no error occurred which was in any manner prejudicial to the defendants. The motion for a new trial is denied.