RITTER v. LYNCH et al.

(Circuit Court, D. Nevada. July 6, 1903.)

No. 726.

1. PUBLIC LANDS—RIGHT OF POSSESSION—ACTS SUFFICIENT TO ESTABLISH.

The question of what acts are sufficient to give a right of possession to public lands is one to be determined upon the facts of each particular case, such as the character of the land, its locality, and the object and purpose for which it is taken up and claimed; the only general rule being that the acts must be of such a character as to show the dominion and control of the claimant over the land.

2. SAME—DEPOSIT OF TAILINGS FROM STAMP MILL—IMPOUNDING IN RESERVOIR.

The owner of a mill for the crushing and reduction of ore constructed a reservoir by building a bulkhead across a ravine on unoccupied public land of the United States adjoining his mill site, in which he impounded the tailings from his mill to the amount of some 60,000 or 70,000 tons, and of considerable value. After his death and the removal of his widow and children, she continued to pay taxes on the land, and to have it looked after by resident agents, who kept trespassers off, and from time to time had repairs made or work done to protect the tailings against being washed away. Held, that such acts of the decedent were sufficient to preserve his ownership of the tailings, and to give him the right to the possession of the land on which they were deposited, which continued in his heirs, and, as shown by the evidence, had never been abandoned by them; that such ownership and right of possession precluded the acquiring of any right in the tailings or the land covered by the reservoir by another by the location thereon of a placer mining claim, based, principally at least, on the discovery of mineral in the tailings, no work having been done on the claim by the locator except with reference to such tailings.

Action of Ejectment Tried to the Court Without a Jury.

F. M. Huffaker and George N. Noel, for plaintiff.
W. E. F. Deal, for defendants.

HAWLEY, District Judge (orally). This is an action of ejectment to recover the possession of 20 acres of land situate within the corporate limits of Virginia City, in Storey county, Nev., described by metes and bounds, and alleged in the complaint to be known and designated as the "Tailings Placer Mining Claim." The parties having waived a jury trial, the case was tried before the court.

The contention of the plaintiff is that the land was open, unoccupied mineral land of the United States on May 7, 1892, and that on said day he duly located the same as a placer mining claim, and thereafter complied with all the requirements of law as to the discovery of mineral, the marking of the boundaries and performance of the annual work thereon; that ever since that date he has been in the peaceable and undisturbed occupancy and possession thereof until January, 1902, when he was wrongfully ousted therefrom by the defendants, and that he is legally entitled thereto; that the defendants have never acquired any title, or taken any legal steps to acquire any title, to any portion of said land; and that no title thereto could be obtained to mineral land "unless there is a location according to law"—citing 1 Lind. on Mines (2d Ed.) § 219, and other authorities. The contention of the defendants is (1) that under the provisions of sections 2382, 2386, 2387, and 2388, Rev. St. [U. S. Comp. St. 1901, pp. 1455, 1457, 1458], and a compliance therewith in 1865 by the authorities of Virginia City, the town sites on which the land in controversy is situated were withdrawn from entry or sale for mining purposes, without any saving clause or condition except that contained in section 2392, Rev. St. [U. S. Comp. St. 1901, p. 1459], which provides that "no title shall be acquired under the foregoing provisions of this chapter to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws," and that the title to the surface of such town sites as were not occupied by any person was in the United States to be held in trust for the inhabitants of the city, and the town sites were not thereafter subject to location as placer mining claims; (2) that the plaintiff had not complied with the mining laws in locating the land in question in this: that he had not discovered any mineral in the ground, except in the tailings, and had not performed the annual work upon the claim, and that the tailings were not, upon the facts disclosed by the testimony, subject to location; (3) that the tailings were, at the time plaintiff attempted to locate the land, the property of one Michael Lynch, from whom the defendants derive their right of possession.

It must be admitted that, if the tailings had been suffered by Mr. Lynch to flow where they listed, his claim of ownership therein would have to be considered as abandoned; or if the tailings were, by their own uninterrupted flow, lodged upon the land of another, they would be considered as an accretion, and belong to the owner of the land. If they were allowed to flow in their natural course, and accumulate on vacant and unappropriated public land, they would become subject to appropriation by any one who took them up and pursued the steps and proceedings analogous to the location of placer mining claims. 1 Lind. on Mines (2d Ed.) § 426, and authorities there cited. But no such conditions appear in this case. It will be conceded that no title

from the government could be obtained for mineral land "unless there is a location according to law"; that every competent locator has the legal right to initiate a claim to any unappropriated public land by a peaceable, adverse entry upon it while it is in the possession of those who have no superior right to acquire the title or to hold the possession. At the same time it must be admitted that the actual possession of a tract of public land is valid as against a mere intruder, or one having no higher or better right than the prior occupant, and that no mining right or title can be initiated by a violent or forcible invasion of another's actual occupancy. Did the defendants, or those under whom they claim, prior to and at the time of the location of the ground by plaintiff as a placer mining claim, have any valid right of ownership and possession, or right of possession, to the tailings situate on the land in controversy, and, if they acquired any such right, has it been maintained, and was it valid at the time the plaintiff attempted to acquire the title to the ground, and at the time he was ousted therefrom? The defendants were not seised in fee of the title to the land. Their ownership and right to the tailings and possession of the land covered by the reservoir in which the tailings were impounded is not necessarily dependent upon their having the legal title to the land. It rests upon other grounds. It appears from the testimony on behalf of defendants that Michael Lynch, prior to 1868, obtained the title to about six acres of land known as the "Hoosier State Millsite," situate above the land in controversy in this action; that he was the owner of a mill upon said land, and operated the same for the crushing and reduction of ore from the Comstock lode; that in the natural working of said mill the tailings therefrom, unless restrained, would run down the canyon, and become lost to the owner thereof; that, in order to impound the same, he constructed a reservoir or bulkhead, situate in the canyon or ravine a short distance below the mill on the ground in controversy, of such size and dimensions and in such manner as to confine the tailings conducted by him from said mill, and enable him to keep and preserve the same from waste or destruction until such time as they could profitably be worked or sold. The reservoir was principally built of the tailings, banking them up in a wet state at the lower end so as to become solid enough to keep the tailings running down the ravine in the reservoir. This reservoir was built upon vacant, unoccupied public land of the United States.

In Jones v. Jackson, 9 Cal. 237, 244, the court said:

"When a place of deposit for tailings is necessary for the fair working of a mine, there can be no doubt of the miner's right to appropriate such ground as may be reasonably necessary for this purpose, provided he does not interfere with pre-existing rights. His intention, however, should be clearly manifested by outward acts. Merely posting a notice would not seem to be sufficient."

In this case there were no pre-existing rights of others that would interfere with the appropriation of the land. Was his intention made manifest by his acts, or was it necessary for him to locate the ground substantially in the manner required for the location of a mining claim by posting notices, marking the boundaries, performance of annual work, etc.? In Rogers v. Cooney, 7 Nev. 213, 218, which was an

action of trespass for entering upon a tract of land and removing therefrom certain tailings claimed by defendants, the court held that it was only necessary for the plaintiff to prove a rightful possession in himself, and that it is not incumbent upon him to establish any title beyond that. In the course of the opinion, after stating that the land in question in that case was of no value except for the tailings thereon —which may substantially be said of the land in controversy in the present case—and that the tailings were only valuable for the gold and silver which they contained, said:

"Although not a mining claim within the strict meaning of the expression as generally used in this country, still it is so closely analogous to it that the propriety of subjecting the acquisition and maintenance of the possession of it to the rules governing the acquisition of the right of possession to a strictly mining claim at once suggests itself."

It will be observed that the court did not hold the land in question "to be mineral land, but only that it is so clearly analogous thereto that the laws controlling the possession of one should also govern the other. * * * The plaintiffs had an undoubted possession sufficient to enable them to maintain trespass against any person entering within their boundaries, except such as would show a better right." Mr. Lynch might, under the principles announced in that decision, have taken up the land on which the tailings were deposited as a placer mining claim—because the tailings deposited thereon gave it value as mineral land—by taking all the steps required by the mining laws, rules, and regulations. This might have been a safer course for him to have pursued in order to prevent litigation and save expense and trouble. But was it absolutely necessary to do so in order to obtain the right of possession to such land? The land was situated in a ravine below the quartz ledges on the Comstock lode, unfit for cultivation, upon and over which could be found only small quantities of gold or silver, which came chiefly from the ledges or the mills above. Did not the acts of Lynch in conducting the tailings from the mill and running them upon this land and building a reservoir to keep them confined clearly manifest his intention to claim and hold possession of the land for the purpose stated, and were they not of themselves sufficient to impart notice that the land was claimed and occupied for that purpose? What other physical marks were necessary to designate the ground or give notice to the world of the extent of Lynch's claim, and the purpose of his occupancy and possession thereof? This case may be sui generis, in that it is apparently the only case that has come before the courts without some proof that other steps were taken to more particularly define the boundaries and extent of the claim. Further steps would, of course, be necessary if the defendants claimed more ground than the reservoir and tailings covered, and their claim must be limited to the land covered by the tailings and the reservoir, with sufficient ground around the same reasonably necessary to protect the claim, or to work upon or remove the tailings therefrom. It does not follow that, because the land could have been located by Lynch as mineral land, he could not obtain a right of possession thereto for the purpose of saving the tailings without complying with all the steps required by the mining laws. The question of what acts

are necessary to obtain possession of land always depends upon the facts of each particular case. They must always be of such a character as to show the dominion and control of the claimant over the land.

In Garrard v. Silver Peak Mines (C. C.) 82 Fed. 578, 591, this court, in discussing this question with reference to saline lands, said:

"The law does not require such land to be fenced in order to subject it to the dominion and control of the claimant. The evidence of acts sufficient to constitute possession of land must always, in a great measure, depend upon the character of the land, its locality, and the object and purpose for which it was taken up and claimed. The law does not require vain and useless things to be done. It only requires such acts to be performed as are necessary to subject the land to the will and control of the claimant, sufficient to notify the public that the land is claimed and occupied, and is in the possession of the claimant."

See, also, Silver Peak Mines v. Valcalda (C. C.) 79 Fed. 886, 889, and authorities there cited; Stanley v. Sierra Nev. S. M. Co. (C. C.) 118 Fed. 931, 933; Rogers v. Cooney, supra; English v. Johnson, 17 Cal. 107, 76 Am. Dec. 574; Table Mountain v. Stranahan, 20 Cal. 199; Hess v. Winder, 30 Cal. 349; 3 Wash. Real Prop. (4th Ed.) par. 32, p. 150.

Did the defendants, after the death of Mr. Lynch, maintain the right of possession to said land, reservoir, and tailings? He died in 1877. His estate was thereafter duly administered upon, and his property—including the land and tailings in controversy—was distributed under due course of administration to the defendants. Mrs. Lynch, in 1882, removed to San Francisco, Cal., and has ever since resided there. Mr. Rogers, who had acted as an agent for Mr. Lynch in his lifetime, after his death acted as agent for Mrs. Lynch, both before and after her departure from Virginia City, to look after all the property, including the ground in controversy, in which she and her children had become interested. She had three tenants living in different places in Virginia City upon her property—one of them (McCaffery) living right near the reservoir; another (McNally) in a house which commanded a view of the premises; and Mr. Henning, who was county assessor. Mr. Henning testified that in 1885 he looked after the tailings for Mrs. Lynch at her request; that he employed a man to build a water dam so as to turn the water away from the tailings, and prevent them from being washed away; that he continued his supervision over the reservoir and tailings for eight or nine years, went to see them occasionally, had some work done on the reservoir at different times; that he requested McCaffery to notify him of any interference by anybody with the reservoir or tailings; that at one time McCaffery reported to him that Ed Geach had broken the reservoir; that he had put a dam in the stream, and turned the water into the pile of tailings, and was attempting to wash them away, and that he (McCaffery) had warned him several times not to do it; that, acting upon this information, he employed a man, and went down to the reservoir, and had the necessary work done to repair it so as to prevent the tailings from being washed away by any one; that at different times while he was looking after the tailings he was requested by Mrs. Lynch to allow, and he did allow, certain parties to sample the tailings with a view of purchasing the same, and that no other parties

had ever been permitted to interfere therewith. Mr. Rogers, the agent of Mrs. Lynch, testified that he had known the ground for 32 years, and had never seen any outsiders at work thereon until 1902, when he drove the employés of plaintiff off the ground; that he had been watching the ground for Mrs. Lynch for about 17 years; that he had done some work repairing the reservoir; that he was at the ground off and on for 15 years, probably 100 different days each year. The testimony shows that Mrs. Lynch had for nearly 30 years paid the taxes on this land; that there were about 60,000 or 70,000 tons of tailings impounded in this reservoir at the time plaintiff made his location of the ground. It is admitted that the tailings are of considerable value.

The fact that Mrs. Lynch paid the taxes on said land is not, of itself, sufficient to show acts of possession, and was not admitted for that purpose, but it is admissible in her favor, as tending to show that she claimed the property, and had at all times been acting in apparent good faith. Webb v. Richardson, 42 Vt. 465, 475. The fact is that the reservoir was at the lower end of the six acres of land owned by Lynch as a mill site, and of itself marked out the defendants' possession as clearly as if the land had been inclosed with a substantial fence. There was never any abandonment of the premises by the defendants. the mere fact that prior to plaintiff's entry upon the land a high freshet, over which no person had any control, had occurred, which washed away a portion of the tailings, does not prove—as plaintiff claims— that the property had been abandoned. Whatever inference, if any, might be drawn therefrom, is dispelled by the acts and conduct of the defendants and their agents in thereafter performing work in repairing the reservoir and diverting the water therefrom, and taking such other steps as were necessary to prevent a further waste of the tailings. Abandonment is a question of intent, to be determined by the special facts in any given case. In order to constitute abandonment of the right of possession which the defendants had acquired, there would have to be shown a clear and unequivocal act or acts of the parties, showing a determination on their part to surrender their right to the property. There must be the concurrence of the intention to abandon and the actual relinquishment of the property, and of their right, dominion, and control over it. The record clearly shows—independent of the testimony of Mrs. Lynch that she had never in any manner, shape, or form intended to abandon or release her claim to the tailings—that the property was never abandoned by the defendants. The facts disclosed by the record are, in my opinion, sufficient to show that the defendants have preserved their ownership of the tailings and possession of the land upon which they were impounded, and that plaintiff did not, by his acts, acquire any right or title thereto as against the defendants.

The testimony offered on behalf of plaintiff to the effect that the land located by him (outside of the land upon which the tailings were deposited) was mineral is very meager. It shows that colors were found over the hillside in different places. This can, perhaps, be said of all the ravines and canyons situate on the eastern slope of Mt. Davidson below the veins, lodes, and deposits of ore on the Comstock

lode. Taking all the testimony offered upon this point in the most favorable light for plaintiff, it seems improbable, to say the least, that any one would have made a placer location thereon except with the view of holding the site of the reservoir in which the tailings were confined. It is true that the plaintiff testified in his own behalf that he would have made the location "if the tailings had not been there"; and in the course of his testimony said that he made the location "for all the mineral in the ground—for tailings, or surface, or amalgam in the creek." When asked if he did not take up the ground principally for the tailings, and if that was not the principal object of his location, he replied, "The tailings cut quite a figure." He considered that the tailings had been abandoned when he located the ground. (The facts prove they were not.) In 1892 and 1893 he did some work upon the ground, and got some samples from the tailings, and took them to his shop in Virginia City for the purpose of ascertaining the value and of testing them under a process which he thought might enable him to work the same profitably. He did no further work upon the ground until 1901, when he again commenced work, boring holes in the tailings to obtain samples therefrom for the purpose of testing the same. He also constructed ditches on the hillside to divert the water from running down into the tailings and washing them away. Nearly all the annual assessment work which he claims to have done upon the ground was done by him upon the tailings in the manner stated, and his employés were engaged in this kind of work upon the tailings in 1902, when they were discovered by the agent of the defendants, and by him driven off the ground covered by the reservoir. The discovery of mineral on the hillside, as testified to by plaintiff's witnesses, might, as against other placer locators of the same ground, have been sufficient to enable the court to say that he had made a discovery of mineral in place, because, as was said by the Court of Appeals for this circuit in Migeon v. Montana C. Ry. Co., 77 Fed. 249, 255, 23 C. C. A. 156, "It was never intended that in such a case the courts should weigh scales to determine the value of the mineral found as between a prior and subsequent locator of a mining claim on the same lode."

Upon a consideration of all the facts and of the law applicable thereto, I am of opinion that the plaintiff has not made out such a case as entitles him to any prior or superior right to the land covered by the reservoir, or to the tailings therein confined.

Let judgment be entered in favor of defendants for their costs.